**IN THE COURT OF APPEALS OF IOWA**

No. 15-0964
Filed August 19, 2015

**IN THE INTEREST OF K.H. and A.H.,**
**Minor Children,**

**A.H., Mother,**
     Appellant,

**K.H., Father,**
     Appellant.
_____

Appeal from the Iowa District Court for Dubuque County, Thomas J. Straka, Associate Juvenile Judge.

A mother and father separately appeal from the order terminating their parental rights.  **AFFIRMED ON BOTH APPEALS.**

Taryn R. Purcell of Blair & Fitzsimmons, P.C., Dubuque, for appellant mother.

Dustin Baker of Baker Law, Dubuque, for appellant father.

Thomas J. Miller, Attorney General, Kathrine S. Miller-Todd and Janet L. Hoffman, Assistant Attorneys General, Ralph Potter, County Attorney, and Joshua A. Vander Ploeg, Assistant County Attorney, for appellee State.

Matthew W. Boleyn of Reynolds & Kenline, L.L.P., Dubuque, for minor children.

Considered by Danilson, C.J., and Vogel and Tabor, JJ.

**DANILSON, C.J.**

A mother and father separately appeal from the order terminating their parental rights to their two children: A.H., born in December 2012; and K.H., born in July 2008. The mother's rights were terminated pursuant to Iowa Code section 232.116(1)(f) and (h) (2015); the father's rights were terminated pursuant to section 232.116(1)(f), (h), (*l*).[1]

---

[1] In pertinent part, Iowa Code section 232.116(1) allows the juvenile court to terminate parental rights if:

(f) The court finds that all of the following have occurred:
(1) The child is four years of age or older.
(2) The child has been adjudicated a child in need of assistance pursuant to section 232.96.
(3) The child has been removed from the physical custody of the child's parents for at least twelve of the last eighteen months, or for the last twelve consecutive months and any trial period at home has been less than thirty days.
(4) There is clear and convincing evidence that at the present time the child cannot be returned to the custody of the child's parents as provided in section 232.102.
. . . .
(h) The court finds that all of the following have occurred:
(1) The child is three years of age or younger.
(2) The child has been adjudicated a child in need of assistance pursuant to section 232.96.
(3) The child has been removed from the physical custody of the child's parents for at least six months of the last twelve months, or for the last six consecutive months and any trial period at home has been less than thirty days.
(4) There is clear and convincing evidence that the child cannot be returned to the custody of the child's parents as provided in section 232.102 at the present time.
. . . .
(*l*) The court finds that all of the following have occurred:
(1) The child has been adjudicated a child in need of assistance pursuant to section 232.96 and custody has been transferred from the child's parents for placement pursuant to section 232.102.
(2) The parent has a severe substance-related disorder and presents a danger to self or others as evidenced by prior acts.
(3) There is clear and convincing evidence that the parent's prognosis indicates that the child will not be able to be returned to the custody of the parent within a reasonable period of time considering the child's age and need for a permanent home.

**I. Background Facts and Proceedings.**

The children came to the attention of the Iowa Department of Human Services (DHS) on March 4, 2013, due to allegations that the father, Ken, was actively using drugs in the family home and selling drugs out of the home. The infant, K.H., tested positive for marijuana. A.H. did not test positive for any illegal substances nor did the mother, Amanda. Ken refused to be tested. Child abuse allegations were ultimately founded for finding illegal drugs in the child and lack of appropriate supervision.

DHS attempted to initiate services with the family. Because Amanda was unable to leave her home due to extreme anxiety, the meeting was held in the family home on April 11, 2013. During that meeting, although Ken admitted he was using both marijuana and heroin, he denied responsibility for K.H.'s positive drug test. Ken refused to participate in substance abuse treatment. Amanda admitted she knew Ken was using drugs and that she had found drug paraphernalia in the home. Support services were offered to the mother, including a referral to the Maria House in the event she and the children needed a safe place to live. Amanda was not working at the time, and she and the children were entirely dependent on Ken's income. Amanda agreed to begin handling the family's financial dealings to ensure she had enough money to pay the rent on their home and provide for the children rather than allow Ken to use the money to buy drugs.

In July 2013, Amanda reported that she could not pay the rent because she had been unable to get all of Ken's paychecks. It was later discovered that Amanda and Ken had had a physical altercation as a result of the shortage of

funds. Both parents missed July meetings with service providers. Ken was hostile toward workers, reiterating he was not going to cooperate with services. At a July 18, 2013 family team meeting only Amanda attended, she admitted she believed Ken continued to use illegal substances and she knew he was not cooperating with services. Despite knowing these things, she had not implemented the safety plan by leaving the home with the children. On the day following the meeting, Amanda reported that Ken had threatened to kill her and the children. She stated she had left the home with the children and stayed with a family member.

On August 4, 2013, Ken showed up at the family home, and Amanda did not contact the police when he would not leave. Given the parents' failure to follow the safety plan or cooperate with services, DHS was unable to insure the safety of the children and requested the children be removed.

On September 23, 2013, a child in need of assistance (CINA) adjudication hearing was held. Adjudication was suspended, and the children were returned to Amanda's care. Amanda had signed a safety plan agreeing Ken would have no unsupervised contact with the children because of domestic violence and his continued use of controlled substances. Amanda and the children, however, returned to the family home within ten days. Amanda claimed Ken would not be in the home with her and, if he did come to the home, Amanda would leave with the children.

A CINA adjudication hearing was set for December 23, 2013. The parents did not contest the adjudication. The ongoing worker, Teena Williams, provided a court update that reported a recent willingness by Amanda to comply with

services. At that time, Amanda was reporting no contact with Ken and a desire to end her marriage to him because of his failure to cooperate with services or make his children a priority. Custody was ordered to remain with Amanda, and the children were adjudicated CINA. They were not to have any unsupervised contact with Ken due to his ongoing substance abuse and mental health issues.

On March 4, 2014, the children were removed because Ken had come to the home and would not leave. The children were placed with their maternal grandmother and have remained there since. Amanda moved back to the Maria House in an effort to have the children returned to her care. She filed for a protective order in October 2014, alleging several instances of domestic violence.

On January 30, 2015, a meeting was held with providers to discuss increasing Amanda's visitation from three consecutive days each week, including overnights. A trial home placement was discussed. But, on February 6, 2015, Ken was arrested when an in-home provider found him in the attic during a random drop-in at Amanda's, and DHS learned that Amanda and Ken had been having on-going contact. Visits between Amanda and children were once again restricted to fully supervised sessions, twice per week. DHS also learned Amanda was expecting another child with Ken.[2]

A petition to terminate parental rights was filed, and a trial was held on April 29 and May 5, 2015. Amanda was not physically present due to her anxiety, but testified by telephone. She stated she was living with Ken. She acknowledged he had been physically violent with her and that he had tested

---

[2] Amanda miscarried and understandably, missed several visits with the children while recovering.

positive for methamphetamine as recently as April 2015. She also testified she was diagnosed with an anxiety disorder, posttraumatic stress disorder symptoms, panic attacks, phobias, attention deficit hyperactive disorder (ADHD), a mood disorder, and a learning disability. She stated, however, that her anxiety would not prevent her from meeting the needs of the children and getting them to appointments or daycare. She noted prior instances of leaving with the children when she found that Ken's behavior posed a safety risk and calling for the assistance of law enforcement when appropriate. However, she also acknowledged there had been instances Ken had prevented her from leaving. She insists she can keep the children safe and still maintain contact with the father. Amanda sought a six-month extension to seek reunification.

Ken acknowledged he has been diagnosed with polysubstance abuse, and the evidence establishes he has a severe substance related disorder. He testified about his use, the ineffectiveness of treatment, the likelihood of continued relapses, and that he "loves his children but loves his addiction too." Ken requested a six-month extension to work toward reunification. He stated he attended inpatient treatment in February 2014 and reported that treatment assisted him in ending his heroin addiction. He testified that he had finally found a counselor he could work with, and caseworkers confirmed he was consistently attending sessions. He further testified that he and his counselor were looking into inpatient treatment programs that would be appropriate. He asserts his substance abuse dependency issues have had no ill effects on his employment. (Ken has been employed throughout the course of the juvenile proceedings, and

he contends his long and unpredictable employment hours often conflicted with his substance abuse counseling and random drug testing.)

The juvenile court entered an order on May 21, 2015, terminating both parents' parental rights. The parents appeal.

## II. Scope and Standard of Review.

We review termination-of-parental-rights proceedings de novo. *In re A.M.*, 843 N.W.2d 100, 110 (Iowa 2014). We give weight to the trial court's fact findings, especially when considering the credibility of witnesses, but are not bound by them. Iowa R. App. P. 6.904(3)(g).

## III. Discussion.

Termination of parental rights under chapter 232 follows a three-step analysis. *See In re P.L.*, 778 N.W.2d 33, 40 (Iowa 2010). First, the court must determine if a ground for termination under section 232.116(1) has been established. *See id.* Second, if a ground for termination is established, the court must apply the framework set out in section 232.116(2) to decide if proceeding with termination is in the best interests of the child. *See id.* Third, if the statutory best-interests framework supports termination of parental rights, the court must consider if any statutory exceptions set forth in section 232.116(3) should serve to preclude the termination of parental rights. *See id.* We will uphold an order terminating parental rights if there is clear and convincing evidence of grounds for termination. *See In re C.B.*, 611 N.W.2d 489, 492 (Iowa 2000). Evidence is "clear and convincing" when there are no "serious or substantial doubts as to the correctness [of] conclusions of law drawn from the evidence." *Id.*

*A. The mother's appeal.* Amanda does not challenge that the children have been adjudicated CINA and have been out of her custody for the requisite time periods under section 232.116(1)(f) (as to K.H.) and (h) (as to A.H.). She contends, however, the juvenile court erred in finding the children could not be returned to her at the present time. We disagree. The admittedly continuing relationship between the parents, which has been punctuated by unresolved domestic abuse including Ken's threat to kill Amanda and the children and Ken's continued use of methamphetamine, presents an ongoing risk of harm to the children. Amanda's testimony minimized the dangers presented by Ken's drug use and his domestic violence, and her claims of the ability to keep the children safe do not inspire confidence.[3] She testified she only sought a protective order to appease her DHS worker, and her testimony makes clear that she continued her relationship with Ken despite informing DHS that she had not.

Amanda also maintains the juvenile court should have granted her an extension to seek reunification. She argues, "in order for the children to be returned to Amanda's care, the only thing that she would need to be rectified during the requested six month extension would be to leave father *if he was unable to overcome his drug addiction.*" Ken has been unable to overcome his addiction for years, and he has continued to use methamphetamine throughout these juvenile court proceedings. Amanda's continued hopes do not strike us as realistic. Iowa Code section 232.104(2)(b) allows the option of continuing

---

[3] At the April 29 hearing, Amanda testified that just the day before she had asked for the phone numbers for a shelter because she and Ken had had an argument related to his continued drug use. She also acknowledged that on at least two occasions, she had stated to DHS that she "wanted Ken's visits stopped due to the danger that he presented to the kids because of his drug use and behavior."

placement for six months if, at the end of the additional period, "the need for removal of the child from the child's home will no longer exist." *See In re A.A.G.*, 708 N.W.2d 85, 92 (Iowa Ct. App. 2005). The juvenile court found an extension was not warranted, and we agree.

Finally, Amanda asserts termination should not occur due to the closeness of the bond between her and the children. *See* Iowa Code § 232.116(3)(c) (providing the court "need not terminate relationship between parent and child if the court finds . . . [t]here is clear and convincing evidence that the termination would be detrimental to the child at the time due to the closeness of the parent-child relationship"). "A finding under [section 232.116] subsection 3 allows the court not to terminate." *A.M.*, 843 N.W.2d at 113. But the "'factors weighing against termination in section 232.116(3) are permissive, not mandatory,' and the court may use its discretion, 'based on the unique circumstances of each case and the best interests of the child, whether to apply the factors in this section to save the parent-child relationship.'" *Id.* (quoting *In re D.S.*, 806 N.W.2d 458, 474–75 (Iowa Ct. App. 2011)). We agree with the juvenile court here that termination and adoption is in the children's best interests.

The children are placed with relatives and are well cared for. The relatives with whom the children are placed are interested in adopting the children in the event that parental rights are terminated. The paramount concern in a termination proceeding is the best interests of the children. *In re D.S.*, 806 N.W.2d 458, 465 (Iowa Ct. App. 2011). The child's safety and the need for a permanent home are the "defining elements in a child's best interest." *See A.M.*, 843 N.W.2d at 113.

We therefore affirm the termination of the mother's parental rights.

*B. The father's appeal.* On appeal, Ken also asserts the parent-child bond should preclude termination here, and he urges he should be granted an additional six months to work toward having the children returned to his care.

> We have long recognized that an unresolved, severe, and chronic drug addiction can render a parent unfit to raise children. *See*, *e.g.*, *In re Interest of J.K.*, 495 N.W.2d 108, 112–13 (Iowa 1993) (terminating parental rights where mother demonstrated unresolved drug dependency and declining to take her "word that she stayed away from drugs"). "No parent should leave his small children in the care of a meth addict—the hazards are too great." *State v. Petithory*, 702 N.W.2d 854, 859 (Iowa 2005).

*In re A.B.*, 815 N.W.2d 764, 776 (Iowa 2012). Ken's past conduct and inability to conquer his drug addictions do not bode well for his claim he can overcome those addictions in the next six months. *See In re Marriage of Hoffman*, ___ N.W.2d ___, ___, 2015 WL 2137550, at *15 (Iowa 2015) ("The best predictor of what someone will do tomorrow is what he or she did yesterday.").

We adopt the juvenile court's findings:

> In making a best interest determination, the court must give primary consideration to the child's safety, the best placement for furthering the long-term nurturing and growth of the child, and to the physical, mental, and emotional condition and needs of the child. Iowa Code § 232.116(2).
>
> In applying these factors to the present case; the court also finds that termination would be in the best interest of the children. The children have experienced much turmoil and instability in their lives due to the parents' failure to make them a priority. The only source of consistency and stability they have experienced has been through their grandmother . . . . The children have been placed with maternal grandmother since the time of their removal in March of 2014. The Department reports that maternal grandmother is committed to the children and has all intentions of adopting the children if parental rights are terminated. The children are observed to be very bonded with maternal grandmother and grandmother is able and willing to meet all of the children's physical, emotional, educational, and psychological needs. Accordingly; the court finds

that termination and adoption will best meet the long-term nurturing; growth, and needs of the children.

Finally, the court has reviewed Iowa Code section 232.116(3) in order to determine if there are any grounds which should be applied to the present case to prevent termination. There is no dispute that the children, especially [A.H.], are bonded with the parents and that the parents love the children. Unfortunately, the parents have not been able to demonstrate that they are capable of meeting the children's needs on a consistent basis. Father has significant unresolved substance abuse issues and mother has been unwilling or unable to move forward with her own independence and establish that she can keep the children safe. While there is no doubt that the termination of parental rights will have a confusing and negative impact on the children, especially [A.H.], the Court finds this negative consequence will be temporary and is outweighed by the long-term permanency and stability that the children will receive through termination and adoption. As a result, the Court finds there are no consequential factors within Iowa Code section 232.116(3) which should be applied to the present case in order to avoid termination.

Ken's efforts have been too little and too late. "The crucial days of childhood cannot be suspended while parents experiment with ways to face up to their own problems." *In re A.C.*, 415 N.W.2d 609, 613 (Iowa 1987). We affirm the termination of the father's parental rights.

**AFFIRMED ON BOTH APPEALS.**