# IN THE COURT OF APPEALS OF IOWA

No. 15-1107
Filed November 12, 2015

**IN THE INTEREST OF H.S., T.T.,**
**M.T, R.T., Z.E., and K.E.,**
**Minor Children,**

**D.E., Mother,**
Appellant.

_____

Appeal from the Iowa District Court for Black Hawk County, Daniel L. Block, Associate Juvenile Judge.

The mother challenges the removal of her children from her care and the following adjudication and dispositional orders. **AFFIRMED.**

Linda A. Hall of Linda Hall Law Firm & Mediation Services, P.L.L.C., Cedar Falls, for appellant.

Thomas J. Miller, Attorney General, and Bruce Kempkes, Assistant Attorney General for appellee State.

Linnea Nicol of Juvenile Public Defender's Office, Waterloo, attorney for minor children and guardian ad litem for T.T., M.T., R.T., Z.E., and K.E.

Michelle McCann of Snow, Knock, Sevcik & Hinze, Cedar Falls, guardian ad litem for H.S.

Considered by Vaitheswaran, P.J., and Potterfield and McDonald, JJ.

**MCDONALD, Judge.**

Dana, the mother of the six children in interest, challenges the order authorizing the temporary removal of the six children from her care, the order adjudicating them in need of assistance ("CINA") pursuant to Iowa Code section 232.2(6)(c)(2) and (n) (2013), and the dispositional order continuing removal of the children from her care. The rights of the three fathers to the six children are not at issue in this appeal. The father of H.S. stipulated the child was in need of assistance and stipulated to continued removal. Michael, the father of Z.E. and K.E., stipulated to the same. The father of T.T., M.T., and R.T. stipulated to the termination of his parental rights to the children in another proceeding. On appeal, the mother challenges the sufficiency of the evidence supporting the adjudication and continued removal.

I.

We review CINA proceedings de novo. *See In re D.D.*, 653 N.W.2d 359, 361 (Iowa 2002). We examine both the facts and law, and we adjudicate anew those issues properly preserved and presented. *See In re L.G.*, 532 N.W.2d 478, 480–81 (Iowa Ct. App. 1995). We give weight to the findings of the juvenile court, especially concerning the credibility of witnesses, but we are not bound by them. *See In re E.H. III*, 578 N.W.2d 243, 248 (Iowa 1998). While giving weight to the findings of the juvenile court, our statutory obligation to review adjudication proceedings de novo means our review is not a rubber stamp of what has come before. We will uphold an adjudicatory order only if there is clear and convincing evidence supporting the statutory grounds cited by the juvenile court. *See* Iowa

Code § 232.96; *see also In re C.B.*, 611 N.W.2d 489, 492 (Iowa 2000). Evidence is "clear and convincing" when there are no serious or substantial doubts as to the correctness of the conclusions of law drawn from the evidence. *See C.B.*, 611 N.W.2d at 492. "The most important consideration in any CINA case is the best interest of the child." *D.D.*, 653 N.W.2d at 362.

## II.

This family came to the attention of the Iowa Department of Human Services ("IDHS") most recently in August 2014 after a report the mother left the oldest child at a shelter. A child-abuse assessment resulted in a founded report of denial of critical care, failure to provide proper supervision. The investigation revealed concerns of domestic violence, illegal substance use by the parents, and improper supervision. The mother's hair stat test was positive for methamphetamine. The mother admitted using methamphetamine more than once during 2014. The IDHS case plan expectations after the founded report included participation in family safety, risk, and permanency services; random drug testing; substance-abuse evaluation and following any recommendations for treatment; and a mental-health evaluation and following any recommendations for treatment.

On December 10, IDHS received a referral alleging the mother was using and selling marijuana in the home. Although the allegation was untrue, an instant urinalysis test of the mother on December 11 gave positive results for amphetamines and methamphetamine. The children were removed from the home. On December 15, a petition was filed alleging the children were in need

of assistance under Iowa Code section 232.2(6)(c)(2) and (n). A removal hearing was held on December 18. On December 19, the court filed its order placing the children in the temporary custody of IDHS for family foster care or relative placement. The court found:

> that the State has shown substantial evidence exists to believe that continued removal of the children is necessary in order to avoid imminent risk to the children's life or health. The children originally came to the attention of the Department of Human Services after concerns regarding domestic violence between the mother and [her husband, Michael], and that [they] were abusing illegal substances while caring for the children. The child, [H.S.] is fourteen years old. [H.S.] has been responsible for the care of the younger children while their mother is at work or otherwise unavailable. Testimony reflects that [H.S.] has been forced to care for the younger children for long periods of time while the mother and [Michael] locked themselves in their bedroom. The children have reported observing [the father] smoke marijuana, drug paraphernalia in the home and domestic abuse between [the mother] and [ Michael]. [The mother] denies using methamphetamines while caring for her children. Despite positive urinalysis testing and hair stat testing, [the mother], denies any recent substance abuse. [She] asserts that any positive drugs tests are a result of her taking Ranitidine, commonly known as Zantac. A prescription she has received for heartburn. The mother has offered Mother's Exhibit #1 and her testimony to support her claims. The court finds the mother and Mother's Exhibit #1, not credible. [The mother] acknowledges using methamphetamines in April, June, and September 2014. [She] has a history of substance abuse. [Her] drug of choice is methamphetamine. [The mother] has been directed to participate in outpatient treatment, however, has not followed through. [She] has failed to comply with requests for random drug testing. [She] has numerous excuses for her failure to follow through. [The mother] testifies because of her job requirements she has not been able to complete drug treatment. [The mother] tested positive for methamphetamines on the day the children were removed. [She] minimizes her behaviors and has scapegoated her present situation on [H.S.]. [H.S.] has validated many of the concerns which exist in the home. [H.S.] was placed in a youth shelter for three weeks by [the mother] because of her behaviors. [H.S.] has been engaging in at-risk behaviors, self-harm, and possible inappropriate relations with older males. [H.S.] is clearly frustrated with what is transpiring in the home. Based upon the testimony a long history of

supervision concerns are present in the home. A breakdown clearly exists in the relationship between [H.S.] and her mother. [The mother] appears to have no insight as to how her relationships with men, use of illegal substances and lack of adequate supervision have placed the children at risk.

On February 19, the court held a contested adjudicatory hearing. The mother had completed a substance-abuse evaluation the preceding October as part of her voluntary participation in services, but she had not begun the recommended outpatient treatment. A January progress report revealed the mother had been a no-show for seven of nine requested drug tests during October, November, and December, but the two drug tests she did take were negative for drugs. She had not had a mental-health evaluation or followed through with mental-health treatment or medication management services as she agreed to do in October. By the time of the adjudicatory hearing, the mother was about seven months pregnant by her current paramour and was in the process of divorcing Michael, who had moved to Texas. The February 5 report to the court noted the mother had participated in only two of six visits with the children since their removal and for only an hour and fifteen minutes of a four-hour visit. The February 16 report to the court noted the mother had participated in all six drug tests in January and February and all were negative, as was a sweat patch test. The report also revealed the mother had been offered fourteen visits between mid-January and mid-February and had participated in eight.

On March 25, the court filed its adjudicatory order, finding all six children in need of assistance pursuant to Iowa Code section 232.2(6)(c)(2) and (n). The order discussed in great detail the family's circumstances as set forth above.

The order also noted a new founded report of past sexual abuse of H.S. by Robert, a former husband and the father of T.T., M.T., and R.T.  The court found "a long history of supervision concerns are present in the home of [the mother]." The concerns included founded child-protective assessments as early as March 2001 and the 2006 termination of the mother's parental rights to another child not at issue in this proceeding.  The court found the mother "appears to have no insight as to how her relationships with men, use of illegal substances, and lack of adequate supervision have placed all of her children at risk.  The juvenile court's aid and assistance is clearly warranted."  The court also determined, "Returning custody of the children to a parent is contrary to the welfare of the children based upon the parents' inability to provide adequate supervision, history of domestic violence, parental substance abuse, and denial of critical care."

Between the time of the February adjudicatory hearing and the March adjudicatory order, the mother had a sweat patch test positive for methamphetamine and a urine test two days later test negative for any drugs.  In April, the mother gave birth, and the child was removed from her care.  That child is not at issue in this appeal.

On June 2, the court held a dispositional hearing, with its dispositional order being filed on June 12.  IDHS recommended continued foster placement for the children and the mother's participation in mental-health counseling, outpatient substance-abuse programming, and domestic-violence counseling. The children's guardian ad litem recommended the court follow IDHS's

recommendations. The court found "continued removal of the children remains in their best interests." The court continued the children's custody with IDHS for suitable family foster care, provided for continued supervised visitation at the discretion of IDHS, and provided visitation could occur in the mother's home so long as her paramour was not present. The mother timely appealed.

III.

The mother first contends there was not substantial evidence "to find that the children were at imminent risk of life or health to support the initial removal and the continued removal of the children." She argues primarily that the initial removal was faulty because it was based solely on the positive instant urinalysis test, which, she asserts was a false positive because of her use of the prescription acid-blocker Ranitidine. She points to her exhibits at the removal and adjudicatory hearings as evidence in support of her argument. The court did not find her exhibits or testimony concerning false positives credible in any of the challenged orders.

Concerning the initial removal, the State correctly contends any complaints are moot because these proceedings have reached the dispositional stage and "[a]ny error committed in granting the temporary ex parte order cannot now be remedied. We cannot go back in time and restore custody based on alleged errors in the initial removal order." See In re A.M.H., 516 N.W.2d 867, 871 (Iowa 1994).

Concerning the adjudication of the children as CINA, the court found grounds under section 232.2(6)(c)(2) and (n). We can affirm the adjudication if

either ground is established by the evidence. *See In re L.G.*, 532 N.W.2d 478, 480 (Iowa Ct. App. 1995). To find a child in need of assistance under section 232.2(6)(c)(2), the court must find the child "has suffered or is imminently likely to suffer harmful effects as a result of . . . failure of the child's parent, guardian, custodian, or other member of the household in which the child resides to exercise a reasonable degree of care in supervising the child." The mother relies on *In re J.S.*, 846 N.W.2d 36, 37 (Iowa 2014), for the proposition a parent's drug addiction, by itself, is not sufficient to establish that the children are imminently likely to suffer abuse or neglect. *J.S.* actually supports the children's adjudication in this case. In *J.S.*, the statutory ground at issue was 232.2(6)(b), which requires a finding the parent is "imminently likely to abuse or neglect the child." The court stated the issue before it was "to determine whether a parent's status as a methamphetamine addict, without more, is enough to support a juvenile court's determination that the parent is 'imminently likely to abuse or neglect the child.'" 846 N.W.2d at 37. It noted, however, "We have no difficulty concluding under a separate statutory provision that a parent's methamphetamine addiction by itself can result in 'harmful effects' to the child, thereby justifying state intervention to protect the child." *See id.*; *see also In re A.B.*, 815 N.W.2d 764, 776 (Iowa 2012) (recognizing "an unresolved, severe, and chronic drug addiction can render a parent unfit to raise children"); *State v. Petithory*, 702 N.W.2d 854, 859 (Iowa 2005) ("No parent should leave his small children in the care of a meth addict—the hazards are too great.").

The mother uses methamphetamine. Her continued, intermittent positive drug tests for methamphetamine belie her assertions she has not relapsed and the positive results are false positives. Her third former husband testified the mother had "talked to [him] about ways to get around drug tests and she's . . . [been] studying trying to figure out ways to maneuver the system just in case" she tested positive. He also testified from her online research she told him about "Zantac" (one trade name of Ranitidine). *Id.* Furthermore, although the positive drug test may have been the precipitating event for the initial removal, the court cited and the record is replete with evidence of long-term abuse and supervision issues in the home. Robert, the second former husband, sexually abused H.S. Matthew, the third former husband, was violent with the mother (leading her to seek a protective order), physically abused H.S., and abused the other children. Matthew and the mother also would close themselves in their room for long periods, leaving H.S. to care for the younger children. By the time of the adjudicatory hearing, the mother was involved with Mike, who has a history of domestic violence and alcohol abuse. Clear and convincing evidence supports the juvenile court's adjudication of the children as CINA under section 232.2(6)(c)(2). Considering the positive test results and the results and recommendations of the May 19 psychological assessment, clear and convincing evidence also supports the dispositional order continuing the children's removal from the home.

The mother also contends the evidence does not support the children's adjudication under section 232.2(6)(n). That section requires finding a "parent's

or guardian's mental capacity or condition, . . . or drug or alcohol abuse results in the child not receiving adequate care." Because clear and convincing evidence supports the children's adjudication as CINA under section 232.2(6)(c)(2), we need not address this claim.

IV.

For the foregoing reasons we affirm the juvenile court's adjudicatory and dispositional orders.

**AFFIRMED.**