**IN THE COURT OF APPEALS OF IOWA**

No. 16-0365
Filed June 15, 2016

**IN THE INTEREST OF J.V., A.V., AND L.V.,**
**Minor children,**

**T.B., Mother,**
Appellant,

**M.V., Father,**
Appellant.

_____

Appeal from the Iowa District Court for Tama County, Angeline M. Wilson, District Associate Judge.

A mother and father separately appeal the termination of their parental rights to three children. **AFFIRMED ON BOTH APPEALS.**

Melody J. Butz of Butz Law Offices, P.C., Center Point, for appellant mother.

C. Aron Vaughn of Kaplan & Frese, L.L.P., Marshalltown, for appellant father.

Thomas J. Miller, Attorney General, and Janet L. Hoffman, Assistant Attorney General, for appellee State.

Ryan P. Tang of the Law Office of Ryan P. Tang, P.C., Cedar Rapids, for minor children.

Considered by Danilson, C.J., and Vaitheswaran and Tabor, JJ.

**TABOR, Judge.**

This child-welfare appeal involves three children: ten-year-old J.V., nine-year-old A.V., and six-year-old L.V. The juvenile court terminated the parental rights of their mother and father under Iowa Code section 232.116(1)(f) and (*l*) (2015). Both parents argue the State did not prove the statutory grounds by clear and convincing evidence. The parents also claim termination is not in the best interests of the children.[1] Because the State offered ample evidence the children could not be safely returned to their parents' care and termination offered them the best chance at long-term nurturing and growth, we affirm.

## I.      Background Facts and Proceedings

This family most recently came to the attention of the Iowa Department of Human Services (DHS) in December 2013 because the parents were alleged to have used methamphetamine around the children.[2] The DHS confirmed the report regarding the father. Another concern surfaced less than two months later when the mother left the children with her mother on February 11, 2014, without telling anyone where she was going or when she would return. Three days later, she had not returned, and the grandmother called law enforcement. While Tama County deputies were at the home, the mother returned under the influence of

---

[1] The mother additionally alleges the State did not provide reasonable efforts toward reunification. Because she did not raise this challenge in the juvenile court, we find it is not preserved for our review. *See In re A.B.*, 815 N.W.2d 764, 773 (Iowa 2012) ("[T]he general rule that appellate arguments must first be raised in the trial court applies to [child-in-need-of-assistance] and termination of parental rights cases.").

[2] This was not the family's first interaction with the DHS. The two older children were adjudicated in need of assistance (CINA) in 2008 due to the father's domestic abuse and the mother's drug use. While the mother resisted drug testing, she did make progress on her case plan and separated from the father. (The father and mother were never married but lived together on and off through the years.) The DHS returned the children to the mother's care in October 2009 and closed the CINA case in 2010.

methamphetamine. The children were removed to foster care because the grandmother faced health issues. The mother was committed for inpatient substance abuse treatment. The juvenile court adjudicated J.V., A.V., and L.V. as CINA by stipulation on April 11, 2014.

The father was incarcerated for the majority of the CINA proceedings. A criminal no-contact order was entered because he made serious threats against the children's mother. He started serving a federal prison sentence in May 2014. He is not scheduled for discharge until July 2018.

On May 21, 2014, the DHS started a trial home placement of the three children with their mother. As a condition of the placement, the court mandated the mother participate in substance abuse treatment until successful discharge and imposed other fairly strict drug testing requirements. The court opined that given the mother's past performance, it was necessary to "make the requirements as concrete and non-negotiable as possible." The DHS ended the trial home placement on August 8, 2014, because the mother tested positive for methamphetamine. The children returned to foster care and have not been returned to either parent's care during the course of the case.

By December 2014, the mother had stopped participating in services and failed to appear at a review hearing. The mother refused drug tests and failed to complete substance abuse treatment. While she was fairly consistent in visiting her children, she did not communicate with the DHS workers. By February 2015, the mother was missing more visits with her children than she was attending. The juvenile court directed the State to file a petition to terminate parental rights.

The State's February 18, 2015 filing spurred the mother to re-engage with DHS services. She was living with her mother and step-father and was working part-time in a restaurant. But the mother did not address her substance abuse issues. She refused to wear sweat patches, instead submitting only to UA tests. When she underwent a substance evaluation, she failed to disclose she had tested positive for methamphetamine in July 2014. She also denied any substance abuse problem. Based on this information, the evaluator did not recommend further treatment and the mother's only follow-up was joining an online support group. The mother tested positive for methamphetamine in June and July of 2015. As a result, visitation reverted back to fully supervised. The mother denied any drug usage and contended her patches were contaminated by the DHS.

The juvenile court held a termination hearing in October 2015. The court issued a detailed and well-analyzed order on February 12, 2016, terminating the rights of both parents under section 232.116(1)(f) and (*l*). The parents separately appeal.

## II. Standard of Review

We review termination proceedings de novo. *In re M.W.*, 876 N.W.2d 212, 219 (Iowa 2016). "'We are not bound by the juvenile court's findings of fact, but we do give them weight, especially in assessing the credibility of witnesses.'" *Id.* (quoting *In re D.W.*, 791 N.W.2d 703, 706 (Iowa 2010)). Clear and convincing evidence must support the termination. *Id.* Evidence is clear and convincing when we have no serious or substantial doubts as to the correctness of conclusions of law drawn from it. *Id.*

**III.    Analysis**

**Statutory Grounds.**   Both parents argue the State failed to prove the grounds for termination by clear and convincing evidence.   "When the juvenile court orders termination of parental rights on more than one statutory ground, we need only find grounds to terminate on one of the sections to affirm."   *In re T.S.*, 868 N.W.2d 425, 435 (Iowa Ct. App. 2015).   We conclude the State offered clear and convincing evidence regarding both parents to satisfy section 232.116(1)(f).[3]

The father has been incarcerated for the majority of these proceedings and is prohibited from contacting the children's mother.   His federal prison sentence runs until 2018.   His counsel acknowledged the children could not be returned to his custody at the time of the hearing.

As for the mother, the juvenile court recognized she had "made some efforts to deal with her substance abuse and has had limited periods of sobriety." The court also asked the most pertinent question: "[W]hether this issue has been adequately addressed so that the children may be safely returned home."   The juvenile court found the children could not be safely placed with their mother. We agree.

The court opined the mother had never been honest with the court and "more importantly honest with herself about her substance abuse issues."   The

---

[3] Iowa Code section 232.116(1)(f) provides the juvenile court may terminate the rights of a parent to a child if:

(1) [t]he child is four years of age or older, (2) [t]he child has been adjudicated a CINA pursuant to section 232.96, (3) [t]he child has been removed from the physical custody of the child's parents for at least twelve of the last eighteen months, or for the last twelve consecutive months and any trial period at home has been less than thirty days, and (4) [t]here is clear and convincing evidence that at the present time the child cannot be returned to the custody of the child's parents as provided in section 232.102.

mother acknowledged using methamphetamine in February 2014 when the children were removed. But she claims her three additional positive drug tests are incorrect and challenges the sweat patches as unreliable. As the juvenile court quipped: "No one person has that bad of luck. It is just not possible that every single one of those tests is incorrect."

Given her dishonesty, the court was not prepared to trust the mother's promise that she could stay sober and stable. Our courts have recognized the hazards of leaving children in the care of methamphetamine users. *See State v. Petithory*, 702 N.W.2d 854, 859 (Iowa 2005). The fact the mother has not accepted her substance abuse problem heightens our concern. *See In re A.B.,* 815 N.W.2d at 776 (explaining "an unresolved, severe, and chronic drug addiction can render a parent unfit to raise children").

The mother has had significant time to address her substance abuse issues, yet has failed to do so. The guardian ad litem best summed up the mother's situation in closing argument: "If you look at all of this as a whole, she's demonstrated it's a revolving door for her. She uses. She recovers for a time. She uses again." We agree with the juvenile court's assessment that the mother is not any closer "to being able to actively and safely parent these children than she was when the children were removed from her custody in February 2014."

**Best Interests and Factors Weighing Against Termination.** Both parents argue termination is not in the children's best interests. The father cites section 232.116(2) and (3) and quotes case law interpreting those sections, but the father does not give specific reasons why preserving his parental rights would

be in the children's best interest; nor does he identify factors weighing against severing the parent-child relationships.

The mother argues she and the children have a close bond and "the children would be devastated if termination was ordered." *See* Iowa Code § 232.116(3)(c). She also claims the children could have been placed with the grandmother again. *See id.* § 232.116(3)(a).

In determining the best interests of the children, we give primary consideration to the children's safety, to the best placement for furthering their long-term nurturing and growth, and to their physical, mental, and emotional condition and needs. *Id.* § 232.116(2); *see also In re D.W.*, 791 N.W.2d at 708. We agree with the juvenile court's conclusion that the children's needs are best served by moving toward adoption.

The record showed J.V., A.V., and L.V. performed well in school. A therapist testified the children tried to do their best "because they thought that if they did well that would be one less thing mom would have to worry about and that it would make it easier for her." The juvenile court described them as "resilient and adaptable" and found they "have been able to deal with every change and disappointment that has been thrown their way."

While their resilience is commendable, these children should not have to suffer continued disappointment waiting for their mother and father to achieve sober and stable lives. *See In re P.L.*, 778 N.W.2d 33, 41 (Iowa 2010) (reiterating that courts will not deprive a child of permanency after the State has proved a ground for termination under section 232.116(1) "by hoping someday a parent will learn to be a parent and be able to provide a stable home for the

child"). Moreover, placement with their grandmother would not support stability in the children's lives. *See In re R.S.R.*, No. 10-1858, 2011 WL 441680, at *4 (Iowa Ct. App. Feb. 9, 2011) ("Termination and adoption are the preferred solution when a parent is unable to regain custody within the time frames of chapter 232.").

Finally, we do not find the closeness of the children's relationship with either parent outweighs their need for permanency. Due to his incarceration and threats against the mother, the father has not developed a strong relationship with the children. The mother clearly does have a bond with the children. But we credit the opinion of the guardian ad litem, who acknowledged the children love their mother "[b]ut the thought that they would be devastated that the Court terminated parental rights, I don't believe is correct."

**AFFIRMED ON BOTH APPEALS.**