**IN THE COURT OF APPEALS OF IOWA**

No. 17-0790
Filed August 2, 2017

**IN THE INTEREST OF K.W. and K.W.,**
**Minor Children,**

**D.W., Father,**
          Appellant.

_____

          Appeal from the Iowa District Court for Page County, Amy L. Zacharias, District Associate Judge.


          A father challenges the termination of his parental rights to two children, ages two and five. **AFFIRMED.**


          Justin R. Wyatt of Woods & Wyatt, P.L.L.C., Glenwood, for appellant father.

          Thomas J. Miller, Attorney General, and Ana Dixit, Assistant Attorney General, for appellee State.

          Vicki R. Danley, Sidney, guardian ad litem for minor children.


          Considered by Danilson, C.J., and Tabor and McDonald, JJ.

**TABOR, Judge.**

A father, Dalton, appeals the juvenile court order[1] terminating his parental relationship with his two children—a son, Ko.W., born in 2011 and a daughter, Ky.W., born in 2014. Dalton asks us to reverse the termination order, alleging insufficient proof of the statutory grounds and a lack of reasonable efforts by the Iowa Department of Human Services (DHS) to allow the children's safe return to their father's care. Dalton also contends termination is not in the children's best interests. In the alternative, Dalton asks for an additional three to six months to reunify with his children.

After independently reviewing the record, we reach the same conclusion as the juvenile court.[2] Dalton did not maintain significant and meaningful contact with his children and did not seek additional services from the DHS. Dalton's continued use of illegal drugs poses an ongoing risk to his children; therefore, termination of his parental rights is in their best interests. Finally, postponing permanency is not warranted on this record.

---

[1] The order also terminated the parental rights of the children's mother, who does not appeal. To the extent Dalton challenges termination of the mother's parental rights, we decline to address his claim. *See In re K.R.*, 737 N.W.2d 321, 323 (Iowa Ct. App. 2007) (noting parent did not have standing to raise arguments on other parent's behalf to gain reversal of a termination order).

[2] Our court's review of termination-of-parental-rights proceedings is de novo, which means we examine both the facts and law and adjudicate anew those issues properly preserved and presented. *See In re L.G.*, 532 N.W.2d 478, 480 (Iowa Ct. App.1995). We are not bound by the factual findings of the juvenile court, but we give them weight. *In re M.W.*, 876 N.W.2d 212, 219 (Iowa 2016). Proof must be clear and convincing, which means we see no "serious or substantial doubts as to the correctness [of] conclusions of law drawn from the evidence." *In re D.W.*, 791 N.W.2d 703, 706 (Iowa 2010).

## I. Facts and Prior Proceedings

Dalton admitted dealing methamphetamine out of the house where he lived with his two children (then ages four and one) in October 2015. In the five years leading up to that time, Dalton regularly used methamphetamine and had been under the influence of the drug while the children were in his care. The parents would ingest methamphetamine in the garage, leaving their young children alone in the house. After investigating the parents' conduct, the DHS entered a founded child abuse report for the denial of critical care and failure to provide proper supervision.

The juvenile court adjudicated Ko.W. and Ky.W. as children in need of assistance (CINA) in January 2016. The court ordered the children removed from Dalton's care but allowed them to remain with their mother. In July 2016, the children were removed from their mother's care and placed with their paternal grandfather, where they remained for the duration of the case.

The State filed a petition to terminate parental rights in January 2017. Two months later, the court held a termination hearing. Neither parent appeared personally, though attorneys represented them at the proceeding. The State presented its case only through exhibits and the juvenile court's judicial notice of the CINA proceedings. The DHS social worker reported her last contact with Dalton was in August 2016.

On May 5, 2017, the juvenile court issued its order, finding grounds to terminate parental rights to the younger child based on Iowa Code section 232.116(1)(h) (2017) and to both children based on section 232.116(1)(e). Dalton filed a timely petition on appeal, contesting that order.

## II. Analysis of Father's Claims

### A. Ground for Termination—Iowa Code section 232.116(1)(e)[3]

The juvenile court found clear and convincing evidence in support of the following elements: (1) the children had been adjudicated CINA under section 232.96, (2) they had been removed from the physical custody of their parents for at least six consecutive months, and (3) clear and convincing evidence existed that Dalton had not maintained significant and meaningful contact[4] with the children during the previous six consecutive months and made no reasonable efforts to resume care of the children despite being given the opportunity to do so. *See* Iowa Code § 232.116(1)(e).

In his petition on appeal, Dalton does not argue he has maintained significant and meaningful contact with his children during the relevant timeframe. Rather Dalton contends his father—who is caring for Ko.W. and Ky.W.—*prevented* Dalton from having meaningful contact with the children. The State replies that Dalton did not preserve this claim about the grandfather's conduct for appeal. *See In re K.C.*, 660 N.W.2d 29, 38 (Iowa 2003) (emphasizing parties to a child-welfare proceeding have an obligation to preserve error for appeal). Dalton did not appear for the termination trial, and his attorney

---

[3] When the juvenile court rests its termination decision on multiple statutory alternatives, we need only find clear and convincing evidence in support of one ground to affirm. *See In re D.W.*, 791 N.W.2d at 707.

[4] The legislature defined "significant and meaningful contact" as including but not limited to "the affirmative assumption by the parents of the duties encompassed by the role of being a parent" requiring not only financial obligations, but also continued interest in the children, a genuine effort to complete the responsibilities prescribed in the case permanency plan, a genuine effort to maintain communication with the children and an effort to "establish and maintain a place of importance in the children's lives." *See* Iowa Code § 232.116(1)(e)(3).

did not raise this issue before the juvenile court. Accordingly, we agree error was not preserved.

But even if we were to consider this issue, we cannot find evidence in the record to support Dalton's allegation that the paternal grandfather hindered Dalton's ability to fulfill his parental obligations. According to the DHS reports, Dalton did not have consistent interactions with his children throughout the CINA case. At a July 2016 review hearing, Dalton requested his father be allowed to supervise visits with Ko.W. and Ky.W. The child protection worker did not believe that arrangement would work out until Dalton "actively engaged" with his mental-health and substance-abuse evaluations but offered to consider the grandfather's ability to supervise visitation "at a later date." The court ordered visitation be at the discretion of the DHS and the children's guardian ad litem. According to the grandfather, Dalton moved to southern Missouri in August 2016.

Starting in October 2016, the family safety, risk, and permanency (FSRP) service provider oversaw visitation. At a January 5, 2017 review hearing, the grandfather told the court that Dalton tried to contact the children one night in late December 2016, but the grandfather "told him no, he wasn't," reasoning: "At this point he is causing more harm than good." After the hearing, the court informed the family members that Dalton's interactions with the children "would be supervised by professionals only."

Dalton attended only four visitations—all supervised—between November 2016 and March 2017. Dalton scheduled a visit with the FSRP worker for February 20 but cancelled his trip to Iowa due to concerns that he had an active warrant for his arrest. We cannot find that the sparse and sporadic nature of

Dalton's interactions with his children were anybody's fault but his own. Termination under Iowa Code section 232.116(1)(e) was proper.

## B. Reasonable Efforts—Iowa Code section 232.102(7)

Dalton next argues he does not believe the DHS made "adequate efforts to provide services to him where he resided in southern Missouri." He contends because services were only offered in Iowa, far from where he resided, he faced a "significant barrier to reunification."

The DHS bears an obligation to make reasonable efforts to facilitate reunification. *See* Iowa Code § 232.102(7); *In re C.B.*, 611 N.W.2d 489, 493 (Iowa 2000). The reasonable-efforts requirement is woven into the State's ultimate burden of proving that children cannot be safely returned to their parent's care. *See In re J.L.*, 868 N.W.2d 462, 465–66 (Iowa Ct. App. 2015).

The State again raises an error-preservation argument, noting Dalton did not claim a lack of reasonable efforts before the juvenile court nor make "any attempt to transfer services to Missouri where he was living." We agree Dalton has not preserved this claim for our review on appeal. *See In re A.A.G.*, 708 N.W.2d 85, 91 (Iowa Ct. App. 2005).

## C. Best Interests—Iowa Code section 232.116(2)

Dalton contends, even if the State satisfied the statutory grounds for termination, the juvenile court wrongly decided that severing the parent-child relationship was in the best interests of Ko.W. and Ky.W. We reject his contention.

Our best-interest determination is driven by the language of Iowa Code section 232.116(2). We give primary consideration to the safety of the children,

to the best placement for fostering their "long-term nurturing and growth," and to the children's "physical, mental, and emotional condition and needs." *See* Iowa Code § 232.116(2); *In re P.L.*, 778 N.W.2d 33, 37 (Iowa 2010).

The record shows Ko.W. and Ky.W. have an emotional attachment to Dalton. According to the DHS reports, the children were "excited to see their dad" when he visited—"running up to see him" and "giving him a hug and smiling" when he arrived at the grandfather's house. But the record also shows the children were disappointed when their father missed visits and were "understandably impacted by their parents' lack of engagement and contact." The paternal grandfather reported Ko.W. had been upset, and the grandfather was seeking counseling and play therapy for Ko.W. The continuing uncertainty of Dalton's commitment to parenting creates emotional turmoil for the children. Termination is a remedy for that uncertainty.

Moreover, the record reveals Dalton has not addressed his substance-abuse issues. Our courts have recognized the hazards of leaving children in the care of methamphetamine users. *See State v. Petithory*, 702 N.W.2d 854, 859 (Iowa 2005). The fact Dalton has not successfully sought treatment heightens our concern. *See In re A.B.*, 815 N.W.2d 764, 776 (Iowa 2012) (explaining "an unresolved, severe, and chronic drug addiction can render a parent unfit to raise children"). Because it is not safe to place the children in Dalton's care, termination serves their best interests.

### D. Additional Time to Reunify—Iowa Code section 232.104(2)(b)

As a fallback position, Dalton requests an additional three to six months to reunify with his children. Under Iowa Code section 232.104(2)(b), the court may continue the children's placement for an additional six months if the court determines the need for removal "will no longer exist at the end of the additional six-month period." We decline Dalton's extension request. Given his chronic and unabated use of illicit drugs and his lackluster commitment to acting as a parent, we do not believe Ko.W. and Ky.W. could safely return to his care in a matter of months. *See D.W.*, 791 N.W.2d at 707 (declining to "gamble with the children's future" by asking them to "continuously wait" for responsible parenting (citation omitted)).

**AFFIRMED.**