# IN THE COURT OF APPEALS OF IOWA

No. 20-0372
Filed September 23, 2020

**IN THE INTEREST OF P.H.,**
**Minor Child,**

**STATE OF IOWA,**
Appellant.

_____

Appeal from the Iowa District Court for Webster County, Joseph L. Tofilon, District Associate Judge.

The State appeals the juvenile court's decision denying a child-in-need-of-assistance petition. **REVERSED AND REMANDED.**

Thomas J. Miller, Attorney General, and Mary A. Triick, Assistant Attorney General, for appellant State.

Douglas E. Cook, Jewell, for appellee mother.

Alesha M. Sigmeth Roberts of Sigmeth Roberts Law, PLC, Clarion, for appellee father.

Sarah J. Livingston of Thatcher & Livingston, P.L.C., Fort Dodge, attorney and guardian ad litem for minor child.

Considered by Vaitheswaran, P.J., and Tabor and Schumacher, JJ.

**SCHUMACHER, Judge.**

The State appeals the juvenile court's decision denying a child-in-need-of-assistance (CINA) petition.  We conclude the State presented clear and convincing evidence to support adjudication under Iowa Code section 232.2(6)(c)(2) (2020) and that the court's aid is required.  We also conclude the court should have continued the removal of the child from parental care.  We reverse the decision of the juvenile court and remand for further proceedings.

### I.     Background Facts & Proceedings

B.G. is the mother of P.H., born in 2018, and Pe.H. is the putative father.[1] P.H. had methamphetamine and amphetamines in his system at birth.  The mother reported to using methamphetamine every day prior to discovering she was pregnant, and then occasionally for the remainder of her pregnancy.  The child was adjudicated CINA.  The mother engaged in treatment for substance abuse, maintained a period of sobriety, and the putative father was incarcerated.  The CINA proceeding was closed on December 19, 2019.

Just a month later, in January 2020, the mother gave birth to another child, A.H., who also had methamphetamine and amphetamines in his system at birth.[2] After attempts to establish a safety plan with the mother failed, the State obtained a removal order for P.H. and A.H., but the mother refused to disclose the children's location for a period of twenty-four hours.  After a sheriff's deputy told the mother

---

[1] During the 2018 CINA proceedings concerning P.H., the putative father failed to participate on twelve separate occasions for paternity testing.  Paternity has never been established for P.H.  An Iowa Department of Human Services (DHS) social worker testified that the putative father acknowledged P.H. was his child.
[2] The infant's umbilical cord was positive for methamphetamine and amphetamines at birth.

she could be charged with interference with official acts, she revealed where the children were, and they were removed from her care. DHS issued a founded report with the mother as the perpetrator of abuse, finding the mother had cared for P.H. while using a dangerous substance. There was also a founded report based on the presence of illegal drugs in A.H.'s body. During that investigation, B.G.'s mother expressed concern her daughter was using drugs again and was involved with the putative father.

Although the mother had been cooperative during the earlier CINA proceedings involving P.H., a DHS worker reported the mother became "very defiant and difficult" after the birth of A.H. The DHS worker testified about the mother's behavior:

> Just the lack of cooperation, the lack of understanding the significance of why we needed to meet and ensure safety of a newborn, and a—a little boy just over the age of one. And her—And having a positive drug screen on that newborn. It's very critical to ensure those children's safety given their age. They don't—They lack the ability to protect and keep themselves safe and are dependent on the caregiver to do that.

Another DHS worker testified the parents spent so much time arguing with the workers "that nothing constructive could ever happen." The mother agreed she was "not real cooperative in the first stages of this case." Efforts to have the parents voluntarily participate in services were not successful, with the mother's behavior described as "irrational."

The State filed a petition on January 28, seeking a CINA adjudication for P.H. under Iowa Code section 232.2(6)(c)(2) and (n).[3] On January 30, following a hearing, the juvenile court continued the removal of the children, finding "the children would be at risk of imminent harm if they were returned to the parents."

The putative father had a substance-abuse evaluation on February 11 and tested positive for amphetamines at that time. There was a recommendation for him to attend an extensive outpatient program, which he began later that month. The putative father pled guilty to charges of possession of a controlled substance, third or subsequent offense, and possession of a firearm as a felon. The mother had a substance-abuse evaluation on February 17. The recommendation from the mother's evaluation was for an extensive outpatient program. The mother had one negative drug test but otherwise did not participate in testing prior to the adjudication hearing.

A CINA adjudication hearing was held on February 26. The DHS social workers and the guardian ad litem supported CINA adjudications for the children. At the time of the hearing, the mother had not yet started a substance-abuse treatment program. The mother testified she was willing to work with DHS in the future. She asked to have the children returned to her care.

The juvenile court adjudicated A.H. CINA but denied the State's request for adjudication of P.H. The court found:

> The State has not met its burden. No evidence has been presented that the parents ever failed to adequately supervise [P.H.] or not provide for him due to substance use. Even assuming *arguendo* that

---

[3] A.H. is not involved in this appeal, however, the State also filed a petition requesting that A.H. be adjudicated as a child in need of assistance pursuant to Iowa Code section 232.2(6)(c)(2), (n), and (o).

the mother and putative father have used drugs, that alone does not show that [P.H.] was ever unsupervised or neglected. The petition with regards to [P.H.] is therefore dismissed and he shall be returned to the care and custody of his mother, [B.G.]

The court added it did "not find that the parents do not have substance abuse issues, that they have not neglected their children, that they do not pose an imminent danger to their children" but the State failed to present clear and convincing evidence to support the CINA petition. The court noted the parents would be required to participate in services due to the CINA adjudication of A.H. The State appealed the court's ruling as to P.H.[4]

## II.    Standard of Review

The juvenile court's decisions in CINA proceedings are reviewed de novo. *In re L.H.*, 904 N.W.2d 145, 149 (Iowa 2017). The Iowa Supreme Court has stated:

> While we are not bound by the juvenile court's factual findings, we accord them weight. Under Iowa Code section 232.96(2), the State bears the burden of proving its allegations by clear and convincing evidence. "Clear and convincing evidence" exists "when there are no 'serious or substantial doubts as to the correctness [of] conclusions of law drawn from the evidence.'" Ultimately, our principal concern is the best interests of the child. In determining the best interests of the child, "we look to the parent['s] past performance because it may indicate the quality of care the parent is capable of providing in the future."

*Id.* (citations omitted).

## III.    CINA Adjudication

The State contends the juvenile court improperly dismissed the CINA petition for P.H. A court may enter a CINA adjudication if the court "concludes facts sufficient to sustain the petition have been established by clear and

---

[4] The State filed a motion for an emergency stay of the CINA order concerning both children with the Iowa Supreme Court on March 2, 2020, which was denied.

convincing evidence and that its aid is required." Iowa Code § 232.96(9). The State sought adjudication of P.H. under section 232.2(6)(c)(2), which applies when a child "has suffered or is imminently likely to suffer harmful effects as a result" of the "failure of the child's parent . . . to exercise a reasonable degree of care in supervising the child."

The term "harmful effects" "pertains to the physical, mental or social welfare of a child." *In re J.S.*, 846 N.W.2d 36, 41 (Iowa 2014) (citation omitted). The State may establish "harmful effects" by showing "there was harm to a child's physical, mental, or social well-being or such harm was imminently likely to occur." *Id.* at 42. The phrase "imminently likely" has been liberally interpreted in CINA proceedings. *Id.* at 43. The statute does not require "harmful effects" "to be on the verge of happening before adjudicating a child as one in need of assistance." *Id.* This is because "[c]hild protection statutes 'are designed to prevent probable harm to the child and do not require delay until after harm has occurred.'" *Id.* (citation omitted). "Hence, a juvenile court could reasonably determine that a parent's active addiction to methamphetamine is 'imminently likely' to result in harmful effects to the physical, mental, or social wellbeing of the children in the parent's care." *Id.* at 42.

When a parent is actively using methamphetamine, we may conclude a child is imminently likely to suffer harmful effects due to the parent's inability to exercise a reasonable degree of care in supervising the child. *See In re A.N.*, No. 17-1521, 2017 WL 6514005, at *3 (Iowa Ct. App. Dec. 20, 2017); *In re A.K.*, No. 12-1303, 2012 WL 5532694, at *3 (Iowa Ct. App. Nov. 15, 2012); *In re C.S.*, No. 05-1738, 2005 WL 3478174, at *3 (Iowa Ct. App. Dec. 21, 2006). "The dangers of

leaving one's children in the custody of actively using methamphetamine addicts cannot be denied. No parent should leave his small children in the care of a meth addict—the hazards are too great." *State v. Petithory*, 702 N.W.2d 854, 859 (Iowa 2005).

The mother has a history of using methamphetamine, and P.H. was born with methamphetamine in his system. She went to treatment for substance abuse, P.H. was returned to her care, and the case was closed in December 2019. A month later, in January 2020, the mother gave birth to A.H., who was also born with methamphetamine in his system. A.H. displayed shaking after birth, while in a foster home, and in relative care.[5] The mother was not honest with service providers. She had one negative drug test but did not cooperate with additional requests for drug testing. The mother waited three weeks to have a substance-abuse evaluation, which recommended extensive outpatient treatment. At the time of the CINA hearing, she had not started a treatment program. As testified to by a DHS worker:

> We had a mom who went through treatment. We have a mom who now has a newborn who has tested again positive for the same substance just 14 months later. We have a mom who was not cooperative in working with the Department and ensuring her children's safety when efforts were made to do that. We have two very tiny children who can't meet any of their own needs . . . .

The putative father has a lengthy history of substance abuse. He tested positive twice on February 12. He provided a negative drug screen seven days

---

[5] Three separate medical personnel expressed concern about A.H.'s thrashing body movements and disorganized breathing being a sign of withdrawal.

later. At the time of the adjudication hearing, he had just started a substance-abuse treatment program.

The parents did not voluntarily agree to participate in services. The mother was described as "very defiant and difficult" after the birth of A.H. The mother agreed, testifying she was "not real cooperative in the first stages of this case." She did not initially comply with the removal order for the children and revealed the location of the children only when threatened with legal action. There was also evidence the parents argued with services providers, to the extent "that nothing constructive could ever happen" in the case.

In addition to evidence the mother had relapsed into using methamphetamine, we consider her failure to comply with all requests for drug testing, the putative father's positive drug test, the mother's attempts to hide the children from DHS so that they were unable to check on the children, and the parents' uncooperativeness. We conclude the State established clear and convincing evidence P.H. was imminently likely to suffer harmful effects as a result of the parents' failure to exercise a reasonable degree of care in supervising the child. *See* Iowa Code § 232.2(6)(c)(2). We conclude the juvenile court should have granted the State's CINA petition for adjudication of P.H. under section 232.2(6)(c)(2).[6]

---

[6] On appeal, the State does not present an argument concerning adjudication under section 232.2(6)(n), which was one of the grounds raised before the juvenile court. Therefore, we do not address this subsection.

**IV. Removal**

Because we find that P.H. should have been adjudicated, we also address the State's claim the juvenile court should have continued the removal of P.H. from the parents' care. On January 27, 2020, the juvenile court ordered that P.H. should be removed from the parents' care. At that time, the court found "the children's immediate removal is necessary to avoid imminent risk to the children's life or health." In the order denying the CINA petition, the court ordered that P.H. be returned to the care of the mother.

Prior to a CINA adjudication, a child may be temporarily removed from the parents' care if "removal is necessary to avoid imminent risk to the child's life or health." *Id.* § 232.95(2)(a); *In re C.F.-H.*, 889 N.W.2d 201, 204 (Iowa 2016). The court is required to "make a determination that continuation of the child in the child's home would be contrary to the welfare of the child, and that reasonable efforts, as defined in section 232.102, have been made to prevent or eliminate the need for removal of the child from the child's home." *Id.* § 232.95(2)(a)(1). "[P]reserving the safety of the child must be the court's paramount consideration." *Id.* § 232.95(2)(a)(2).

After adjudication, a child may be removed under section 232.96(10). *C.F.-H.*, 889 N.W.2d at 204. Section 232.96(10), however, "authoriz[es] temporary removal of the child from the child's home as set forth in section 232.95[(2)(a)]." Therefore, our consideration of removal is the same under section 232.95 and 232.96. *See id.*

At the CINA adjudication hearing, the DHS worker testified, "At this time, there's been a struggle for cooperation." In addition to the evidence the parents

used methamphetamine, the parents argued with social workers to the extent "they weren't getting the things done that needed to get done." The parents focused on fighting DHS rather than the needs of the children. We also consider that for a period of twenty-four hours, the mother did not obey the removal order and hid the children from DHS. *See In re I.K.*, No. 12-1739, 2012 WL 5615349, at *1 (Iowa Ct. App. Nov. 15, 2012) (discussing the parents' failure to comply with a safety plan in determining whether children should be removed from their parents' care). P.H. was very young and could not take care of himself. *See id.* (noting children's young age as a factor in discussion of removal from the parental home).

As the State points out, there are situations where children can remain safe in parental custody of a parent who has recently tested positive for methamphetamine. In cases where parents are honest about their usage, cooperative with DHS safety services, and are actively engaged in substance-abuse treatment, they may, with the help of family and service providers, be able to safely maintain their child in their home. These mitigating facts are not present in this case. The mother refused to cooperate with safety planning. She was not actively engaged in treatment at the time of the adjudication hearing and reported her last use of methamphetamine as being in 2018, even with a positive umbilical cord test for her youngest child, born in early 2020.

We find removal of P.H. from the parents' care "is necessary to avoid imminent risk to the child's life or health." *See* Iowa Code § 232.95(2)(a). The mother's substance abuse and uncooperative attitude with DHS results in a finding "that continuation of the child in the child's home would be contrary to the welfare of the child." *See id.* § 232.95(2)(a)(1). She has given birth to two children in

approximately a year and a half, both of whom have tested positive at birth for illegal substances. The mother put P.H.'s life or health at risk by hiding the child from DHS. We conclude the juvenile court should have continued the child's removal from the parents' care.

We are cognizant of the fact that dismissal of the petition for adjudication and return of the child to the mother's care occurred on February 27, 2020. While we find sufficient evidence was presented at hearing to warrant continued removal, we remand for further proceedings to determine if the circumstances present at the time of the hearing continue to exist, warranting removal, and if so, for a determination of reasonable efforts made by DHS to prevent continued removal of the child from the home.

**REVERSED AND REMANDED.**