**IN THE COURT OF APPEALS OF IOWA**

No. 20-1348
Filed January 21, 2021

**IN THE INTEREST OF R.P. and K.P.,**
**Minor Children,**

**L.P., Father,**
     Appellant.
_____

     Appeal from the Iowa District Court for Tama County, Angie Johnston, District Associate Judge.

     A father appeals a juvenile court order adjudicating his two children in need of assistance. **AFFIRMED.**

     Peter Stiefel, Victor, for appellant father.

     Thomas J. Miller, Attorney General, and Mary A. Triick, Assistant Attorney General, for appellee State.

     Taylor Reichardt of Kaplan & Frese, LLP, Marshalltown, attorney and guardian ad litem for minor children.

     Considered by Vaitheswaran, P.J., and Tabor and Ahlers, JJ.

**TABOR, Judge.**

Citing their father's habitual drug use and "his willingness to keep and distribute large amounts of methamphetamine from the premises of the family home," the juvenile court adjudicated eleven-year-old R.P. and eight-year-old K.P. as children in need of assistance (CINA).[1]  Only the father appeals.  He argues (1) the State failed to present clear and convincing evidence to prove the grounds for adjudication and (2) the court erred in not dismissing the CINA adjudication at the dispositional hearing.

In our de novo review,[2] we find the record contains sufficient proof to support the grounds for adjudication.  The father also failed to show the children were no longer at risk when he sought dismissal.  For these reasons, we affirm the juvenile court's rulings.

## I.  Facts and Prior Proceedings

In February 2020, Levi landed in the hospital after suffering broken ribs and a head injury in an all-terrain vehicle accident.  During his treatment, a routine urine test showed Levi was positive for amphetamines, opioids, and methamphetamine.  Within forty-eight hours, the Iowa Department of Human Services (DHS) began a child-abuse investigation based on the hospital's "concerns that Levi was using methamphetamine while residing in the home with his children."

---

[1] The father, Levi, has another daughter, H.P., who turned eighteen years old in July 2020—a month before the adjudication hearing.  The juvenile court dismissed her CINA case.

[2] Our standard of review in CINA cases is de novo.  *In re J.S.*, 846 N.W.2d 36, 40 (Iowa 2014).  We give weight to the juvenile court's fact findings, though they do not bind us.  *Id.*  Our main consideration is the best interests of the children.  *Id.*

A child protection worker met with Levi and the children's mother, Jennifer, at their ranch-style house for an interview. During that interview, Levi admitted using methamphetamine daily for the past seventeen years. He said the drug "made him feel normal." The child protection worker noted Levi "seemed very frustrated with the questions" because he did not think his drug use affected his parenting.[3] For her part, Jennifer said she could not do much about Levi's substance abuse because he was "a grown man." Both parents insisted that Levi only used methamphetamine at work.[4] But sometimes he would be away on work trips "for several days or even weeks."

In late March, the DHS issued a founded child-abuse report with Levi as the perpetrator after determining he unlawfully used or possessed methamphetamine while caring for the children.[5] Based on the founded report, the State petitioned the juvenile court to adjudicate R.P. and K.P. as CINA.

From March through August, the DHS had five in-home visits with the family. According to the case manager, Levi participated in only one of those interactions. During the other visits, Levi was either in the garage or the basement. Each time, Levi would make an appearance for "about 60 seconds."

---

[3] To that point, the child protection worker saw no signs of physical abuse or malnourishment in observing R.P. and K.P. on her visit.

[4] Levi told worker that he did farm labor in the spring, snow removal in the winter, and sold fireworks in the summer.

[5] Levi had pending criminal charges for possession of a controlled substance and drug paraphernalia from 2019. In that incident, a passerby reported a "male slumped over the wheel" of his truck in the middle of an intersection. When police arrived, Levi was asleep in the driver's seat with a pipe in his right hand. Levi admitted the pipe contained methamphetamine. Police later found a small baggie of methamphetamine in the center console. When questioned, Levi told the officers he was on his way home from work.

A few days before the adjudication hearing, the DHS notified the court that another child-abuse assessment was in progress. That assessment originated with a report from Tama County Deputy Sheriff Lucas Dvorak, who provided evidence that Levi was trafficking drugs from the family home.[6] The report also named Jennifer as a perpetrator of abuse for failing to adequately supervise the children.

Based on the deputy's report, the DHS implemented an emergency safety plan that required Levi to move out of the home and prevented him from having any unsupervised contact with the children. Child protection worker Lacey Halleck described her uncomfortable exchange with Levi on the safety plan:

> He was rather agitated and didn't really want to have a conversation with me at that point in time. He said he would agree to sign the safety plan because he felt like he didn't have a choice at that point in time but that he felt that his children were safe and DHS was wasting their time.

At the August 31 adjudication hearing,[7] Jennifer stipulated to the CINA petition under Iowa Code section 232.2(6)(c)(2) (2020) for her failure to adequately supervise the children. Levi objected to the petition. The court heard testimony

---

[6] As part of an ongoing narcotics investigation, Deputy Dvorak executed a search warrant at the house on August 26. According to Dvorak, the children, R.P. and K.P., were awake when officers began the search but soon went to their bedroom. Police found "just under 74 grams of methamphetamine, approximately $11,000 U.S. currency, marijuana, suspected marijuana edibles or THC edibles, suspected psilocybin mushrooms, prescription pills, digital scales, packing and paraphernalia" in the attached garage. Dvorak testified the garage was accessible through a door that led to the kitchen. Although the door had a lock, he could not recall whether it was secured when police executed the search. Police did not arrest Levi on the day of search.

[7] The court conducted the hearing using remote technology because of the COVID-19 pandemic. *See* Iowa Supreme Ct. Supervisory Order, *In the Matter of Ongoing Provisions for Coronavirus/COVID-19 Impact on Court Services* (May 22, 2020).

from the child protection workers, the DHS case managers, and Deputy Dvorak. Invoking their Fifth Amendment right against self-incrimination, neither Jennifer nor Levi testified at the hearing.

The child protection workers believed R.P. and K.P. needed help because their home environment was not safe. Halleck expressed concerns that the children were at risk of physical harm from exposure to the illegal drugs or violence from drug-related activities, as well as "potential mental and emotional neglect." Deputy Dvorak believed the presence of drug activity at the family residence endangered the children. The children's guardian ad litem also supported granting the CINA petition based on the search warrant evidence.

The juvenile court granted the State's petition, finding intervention was necessary after the "major drug raid at the family home." The court reasoned:

> Levi seems to think that as long as the children are fed and not physically abused, the children are safe. Neither parent seems to understand the large propensity for physical and emotional danger that dealing methamphetamine out of the family home poses to these children. This behavior has clearly been ongoing during the pendency of the voluntary case.

The court did not order the children be removed from their home. But given recent events, the court did direct Jennifer and the children to complete hair drug tests before the next hearing. Jennifer, R.P., and K.P. tested negative for methamphetamine and other drugs. Focusing on that evidence, Levi asked the court to dismiss the CINA adjudication order at the October dispositional hearing. In his view, the negative test results proved his substance abuse did not harm the children. In the alternative, Levi asked the court to amend the safety plan to allow him to return home.

Despite Levi's pleas, the court maintained the children's CINA status and reaffirmed the safety plan. In doing so, the court stated: "The bottom line is regardless of whether the kids actually ingested drugs it is still an unsafe situation when you're actively dealing drugs out of the family home. I don't know how else I can put this to you guys to understand. That in itself is an inherent danger."

Levi now appeals.

## II.  Grounds for Adjudication

The juvenile court adjudicated R.P. and K.P. as CINA under Iowa Code section 232.2(6)(c)(2), (n), and (p). Levi contests all three grounds. We will address each argument in turn. *See J.S.*, 846 N.W.2d at 41 (affirming on multiple theories because basis for CINA adjudication may affect eventual grounds for termination of parental rights).

Under section 232.2(6)(c)(2), the State must present clear and convincing proof that a child "has suffered or is imminently likely to suffer harmful effects" as a result of the parent's failure "to exercise a reasonable degree of care in supervising the child." It helps to break these concepts into digestible parts. First, our supreme court defined "harmful effects" to mean "harm to a child's physical, mental, or social well-being." *Id.* at 42. Second, the court offered various interpretations of "imminent" including "on the point of happening." *Id.* at 43 (quoting *Black's Law Dictionary* 750 (6th ed.1990)). Overall, CINA cases adopt a liberal interpretation of the phrase "imminently likely." *Id.* Under this formulation, "a parent's active addiction to methamphetamine" may be "'imminently likely' to result in harmful effects to the physical, mental, or social wellbeing of the children in the parent's care." *Id.* at 42. But "general statements about methamphetamine

addiction" standing alone are not enough to show an imminent risk of harm under the clear and convincing standard. *Id.*

Levi contends the State failed to meet that standard under section 232.2(6)(c)(2) because (1) Jennifer was the children's primary caretaker and (2) the State offered no proof his substance abuse hurt the children in the past, so harm was unlikely to result now. We are unpersuaded by either contention.

True, the risk of harm may be reduced where another parent or relative can supervise the children when a parent is dealing with an untreated addiction. *See id.* (comparing untreated addiction "to what occurs when a parent falls ill or becomes disabled and leaves her or his children with a relative"). But what if neither parent offers safe supervision? Jennifer stipulated to the CINA adjudication based on her failure to adequately supervise the children at their home. *See* Iowa Code § 232.2(6)(c)(2). Even without that stipulation, Jennifer did not exercise reasonable care in allowing Levi continued contact with the children while he was actively using methamphetamine. *See State v. Petithory*, 702 N.W.2d 854, 857 (Iowa 2005) ("The dangers of leaving one's children in the custody of actively using methamphetamine addicts cannot be denied."). Thus this factor carries little weight in our analysis.

We also reject Levi's second contention. Section 232.2(6)(c)(2) does not require proof of past harmful effects to establish an "imminent likelihood" of future harm. *See J.S.*, 846 N.W.2d at 43 ("Child protection statutes 'are designed to prevent probable harm to the child and do not require delay until after harm has occurred.'" (quoting *In re L.L.*, 459 N.W.2d 489, 494 (Iowa 1990))). On this point, Levi ignores crucial evidence in the record—that he was keeping illegal drugs on

the premises where his children lived. Even without proof that R.P. and K.P. were aware of or exposed to the methamphetamine, its presence in the garage—coupled with Levi's long-standing addiction—was enough to establish an imminent likelihood of harm. *See Petithory*, 702 N.W.2d at 857 (rejecting father's claim that "he was a careful drug abuser, smoking it only in the basement, where the children were not allowed" because he "handled and consumed the illegal drug in the very house wherein the girls resided"). The sizeable drug operation in the family garage—including seventy-four grams of methamphetamine and $11,000 in cash—created an unsafe environment for the children. *See In re L.H.*, No. 19-0931, 2019 WL 5063336, at *5 (Iowa Ct. App. Oct. 9, 2019) (recognizing drug trafficking within child's home "exposes the child to dangerous people and situations"). Thus the State satisfied its burden under section 232.2(6)(c)(2).

We next turn to the court's CINA finding under section 232.2(6)(n). This provision requires clear and convincing proof that because of a parent's "drug or alcohol abuse," the children were not receiving adequate care. Iowa Code § 232.2(6)(n). To meet its burden, the State must establish a nexus between the parent's drug use and the children's receipt of inadequate care. *In re M.S.*, 889 N.W.2d 675, 682 (Iowa Ct. App. 2016) (explaining drug use standing alone does not establish adjudicatory harm in CINA and termination proceedings). Levi claims the nexus is lacking because the "children always appeared clean, healthy, and properly nourished and the home was safe and appropriate."

As the juvenile court reasoned, "Court intervention is necessary because Levi refuses to take responsibility for his drug use and get help." As an example, the children were awake, though briefly, when police executed the search warrant

at 1:30 in the morning. And Deputy Dvorak believed "Levi looked under the influence and very strung out during the search." *See In re T.B.*, No. 18-1139, 2018 WL 4361181, at *2 (Iowa Ct. App. Sept. 12, 2018) (finding parent's continued methamphetamine use during pendency of case creates a risk of adjudicatory harm to the children). Yet Levi still refused to acknowledge his substance-abuse problem: "I didn't do anything wrong." On this record, we find clear and convincing proof that Levi's continued drug use and unwillingness to seek help prevent him from providing adequate care. *See In re L.R.*, No. 17-1010, 2017 WL 3525346, at *3 (Iowa Ct. App. Aug. 16, 2017) (finding mother's unresolved mental-health issues and "inability to heed the advice of professionals" sufficient to support adjudication under paragraph (n)).

Finally, we address whether sufficient proof supported the ground for CINA adjudication under section 232.2(6)(p). This provision comes into play when a parent "unlawfully uses, possesses, manufactures, cultivates, or distributes a dangerous substance in the presence of a child . . . or unlawfully uses, possesses, manufactures, cultivates, or distributes a dangerous substance specified in subparagraph (2) . . . in a child's home, on the premises, or in a motor vehicle located on the premises." Iowa Code § 232.2(6)(p). The statute's list of dangerous substances includes methamphetamine. *See id.* § 232.2(6)(p)(2)(b).

In challenging this ground, Levi claims the State failed to prove he possessed methamphetamine "in the presence of a child." But section 232.2(6)(p) provides an alternative to the presence requirement: "*or* unlawfully uses, possesses, manufactures, cultivates, or distributes a dangerous substance . . . *in a child's home, on the premises, or in a motor vehicle located on the premises*."

(Emphasis added.)  Because Levi does not dispute the State's proof that police found methamphetamine on the premises of the children's home, the State met its burden on this ground.

Finding clear and convincing evidence in the record to support all three grounds, we affirm the juvenile court's CINA adjudication.  We also affirm the court's dispositional order because the record does not show that R.P. and K.P. are "no longer in need of supervision, care, or treatment."  *See* Iowa Code § 232.103(4); *see also In re A.B.*, 569 N.W.2d 103, 107 (Iowa 1997) (noting statute precludes ending CINA status until children no longer need that protection).

**AFFIRMED.**