## IN THE COURT OF APPEALS OF IOWA

No. 20-0607
Filed April 14, 2021

IN RE THE MARRIAGE OF MATTHEW HOWE
AND LINDSEY HOWE

Upon the Petition of
MATTHEW HOWE,
      Petitioner-Appellant,

And Concerning
LINDSEY HOWE,
      Respondent-Appellee.

_____

Appeal from the Iowa District Court for Lee (North) County, John M. Wright,
Judge.

Matthew Howe appeals the physical care provisions of the district court's
dissolution decree. **AFFIRMED AS MODIFIED AND REMANDED.**

Beau A. Bergmann of Bergmann Law Firm, P.L.L.C., Mt. Pleasant, for
appellant.

Lindsey Howe, Donnellson, self-represented appellee.

Thomas J. Miller, Attorney General, and Kevin E. Kaufman, Assistant
Attorney General, for appellee CSRU.

Considered by Doyle, P.J., and Tabor and Ahlers, JJ.

**AHLERS, Judge.**

Matthew Howe appeals the district court's dissolution of marriage decree granting the parents joint physical care of their two children.[1] We agree physical care of the children should be placed with Matthew. Therefore, we modify the dissolution decree accordingly and remand for further proceedings.

Prior to their marriage in 2015, the parties had two children together, born in 2012 and 2015. The parties physically separated in 2016. In early 2019, Matthew filed a petition for dissolution of marriage. In November 2019, Lindsey gave birth to another child, T. The parties agree Matthew is not the father of T.[2]

Following a trial, the district court issued a decree dissolving the marriage, granting Lindsey's request for joint legal custody and joint physical care of the two children, establishing Matthew's child support obligation, and resolving all other dissolution issues. Matthew appeals the grant of joint physical care, asking us to place physical care of the children with him.

Although Matthew's brief asks us to apply an abuse-of-discretion standard of review, we decline to do so. We review dissolution of marriage proceedings de novo. Iowa R. App. P. 6.907; *In re Marriage of Larsen*, 912 N.W.2d 444, 448 (Iowa 2018). This means we give weight to the factual findings of the district court, especially when considering the credibility of witnesses, but we are not bound by

---

[1] The State appeared in the dissolution proceeding as a friend of the court in order to coordinate the dissolution decree with any preexisting state benefits and support orders. The State does not participate in this appeal.

[2] The decree of dissolution disestablished Matthew as the father of T. Custody and care of T. is not an issue on appeal.

them. Iowa R. App. P. 6.904(3)(g); *In re Marriage of Fennelly*, 737 N.W.2d 97, 100 (Iowa 2007).

When physical care is an issue, "the first and governing consideration of the courts is the best interests of the child[ren]." Iowa R. App. P. 6.904(3)(o). "The objective of a physical care determination is to place the children in the environment most likely to bring them to health, both physically and mentally, and to social maturity." *In re Marriage of Hansen*, 733 N.W.2d 683, 695 (Iowa 2007). Joint physical care provides both parents with rights and responsibilities for the children and "neither parent has physical care rights superior to those of the other parent." Iowa Code § 598.1(4) (2019). The courts may grant a party's request for joint physical care unless "joint physical care is not in the best interest of the child[ren]." *Id.* § 598.41(5)(a).

According to Lindsey's testimony, she used methamphetamine throughout her recent pregnancy with T. T.'s father introduced Lindsey to methamphetamine, and Lindsey ended their relationship after about one month when she learned she was pregnant. Even though Lindsey's doctors expressed concern about her drug use during pregnancy, she tested positive for methamphetamine during most of her prenatal medical appointments. Lindsey continued to use methamphetamine "because it was an addiction." Both Lindsey and T. tested positive for methamphetamine when T. was born, which led to involvement with the Iowa Department of Human Services (DHS).[3] At the time of the trial, Lindsey had not

---

[3] DHS involvement has not led to the removal of any of Lindsey's children from her care. Matthew testified he learned of Lindsey's drug use from the DHS involvement, which spurred him to file for dissolution and seek care of the children.

used drugs in the almost two months since T.'s birth, and she had been in outpatient drug treatment for two weeks and was "doing just fine."

Lindsey's admitted addiction to methamphetamine raises serious concerns about her ability to properly care for the children. "We have long recognized that an unresolved, severe, and chronic drug addiction can render a parent unfit to raise children." *In re A.B.*, 815 N.W.2d 764, 776 (Iowa 2012); *see also State v. Petithory*, 702 N.W.2d 854, 859 (Iowa 2005) ("No parent should leave his small children in the care of a meth addict—the hazards are too great."). Lindsey put T. at risk by using methamphetamine throughout pregnancy, including several months of use after she separated from the man who fathered T. and introduced her to methamphetamine. Lindsey denied using methamphetamine around the other two children, but she acknowledged she "[p]robably sometimes" still had methamphetamine in her system while caring for the children. We commend Lindsey's efforts to combat her addiction and her plan to develop stability. However, plans for future stability do not equal current stability, and current stability is needed to warrant an award of joint physical care of two young children. It is too early in Lindsey's recovery to determine whether her methamphetamine addiction is severe or chronic, and less than two months of claimed sobriety, with two weeks of outpatient treatment, does little to ease our concerns that Lindsey's methamphetamine addiction will continue to be an issue in caring for the children.

We have additional, less serious concerns about Lindsey's ability to parent. Lindsey has been unemployed at least since her pregnancy with T., and Matthew testified she has never "been able to hold down a job." At the time of the trial, Lindsey's residence was unclear. Lindsey testified she lives with her mother but

also "spend[s] a lot of time" at her paramour's home. Lindsey has been in a relationship with the paramour for six months, and the record does not show if the paramour assists in caring for the children other than Lindsey's testimony that he "takes care of them just like they were his own." The paramour does not live in the children's school district, but Lindsey testified he plans to move closer to their school "[s]ome time in the next few months."

The record does not show similar concerns about Matthew's ability to parent. According to Matthew's testimony, he does not use controlled substances and has always passed drug testing for his work. Matthew lives with his paramour of three years in a home in the children's school district. Matthew and his paramour are both employed full time, and they can make day care arrangements when needed. Matthew and his paramour both testified his paramour has a good relationship with the children and takes an active role in their care. Lindsey in her testimony agreed Matthew is a good father and the children would be well taken care of in his care.

As the district court noted, certain factors support a finding a joint physical care. The parties apparently shared physical care after separating in 2016, although most of this time occurred before Lindsey began using methamphetamine. The court's temporary order largely continued this shared care arrangement with no reported incidents. Although Lindsey's paramour lives outside the children's school district, all parties live in the same area and close enough to transport the children to and from school. The parties showed civility and an ability to cooperate during the trial. These factors in favor of joint physical

care are not enough to overcome our serious concerns with Lindsey's ability to parent.

Due to Lindsey's methamphetamine addiction and other concerns described above, we cannot agree joint physical care is in the best interests of the children at this time. Whether Lindsey would be a suitable joint physical caretaker for the child at some future time if she successfully follows through with her plans to achieve long-term sobriety and stability is a question that can be addressed in a future modification action. However, based on the current state of circumstances as established by this record, physical care should be placed with Matthew. Therefore, we modify the dissolution decree. We vacate that part of the decree awarding the parties joint physical care. Instead, Matthew is granted physical care of the children subject to Lindsey's visitation rights and Lindsey shall be required to pay child support to Matthew. We remand to the district court to set a visitation schedule that takes into account our concerns about Lindsey's methamphetamine addiction and instability and the fact Matthew will have physical care of the children. *See* Iowa Code § 598.1(7) (defining physical care). On remand, the district court shall also determine Lindsey's child support obligation.

**AFFIRMED AS MODIFIED AND REMANDED.**