# IN THE COURT OF APPEALS OF IOWA

No. 23-1096
Filed November 13, 2024


**STATE OF IOWA,**
    Plaintiff-Appellee,

**vs.**

**JACKSON CHRISTOPHER EUGENE CALAWAY,**
    Defendant-Appellant.
_____


Appeal from the Iowa District Court for Polk County, Heather Lauber, Judge.


A defendant appeals his convictions for interference with official acts with a weapon and person ineligible to carry a dangerous weapon. **AFFIRMED.**


Martha J. Lucey, State Appellate Defender, and Michelle E. Rabe (until withdrawal) and Nan Jennisch, Assistant Appellate Defenders, for appellant.

Brenna Bird, Attorney General, and Martha E. Trout, Assistant Attorney General, for appellee.


Considered by Tabor, C.J., Sandy, J., and Carr, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2024).

**CARR, Senior Judge.**

Jackson Calaway appeals his convictions for interference with official acts with a weapon, pursuant to Iowa Code section 719.1(1)(f) (2023) (count I), and person ineligible to carry a dangerous weapon, pursuant to section 724.8B (count II).  We affirm.

## I.  Background Facts and Procedure

At around 5:00 p.m. on December 24, 2022, Windsor Heights 9-1-1 dispatch received a report of three men walking around a Walmart parking lot.  The caller stated they saw one of the men brandish a gun at a passing motorist.  The caller also reported that the men then got into an older, white car and provided a license plate number.  Windsor Heights Police Officer Matthew Palmer responded to the call and did not find the men or the vehicle in the parking lot.

Clive Police Officer Odessa Clark, who responded to assist, saw the reported vehicle enter a convenience store parking lot and observed three men in the vehicle.  Officer Clark saw the three men exit the vehicle.  Officer Clark informed Officer Palmer that he had located the suspect's vehicle.  Officer Palmer, who was in unform and operating a marked vehicle, then entered the parking lot and noticed the three men walking towards another vehicle.  Officer Palmer reported that, as soon as he entered the parking lot, the individual who he later identified as Calaway "shoved his hand deep in his sweatshirt pocket and turned 180 degrees away from his three-man group and proceeded towards a dark section of the parking lot."

Officer Palmer activated his overhead red and blue lights.  He intended to detain Calaway, believing his behavior suggested he was the individual with the

reported weapon. Officer Palmer then stepped out of the vehicle and instructed Calaway to stop. Calaway turned and ran toward a nearby building. Palmer claimed he was a "hundred percent" certain he saw Calaway throw a gun into a bush. Officer Palmer stopped to pick up the weapon from the bush. Officer Clark caught up to Officer Palmer at that point and continued the pursuit without stopping. Officer Clark informed Calaway that he would tase Calaway if he did not stop. Calaway then halted and was taken into custody.

Meanwhile, after Officer Palmer secured the gun in his "left pocket," he turned around to confront an individual who he believed was chasing him and had been shouting at Officer Palmer to, "Put the fucking gun away." Officer Palmer "issued him commands," but he failed to listen. Fearing that individual may have also been armed, Officer Palmer then tackled the individual, who he identified to be one of the other two individuals from the white vehicle. During that struggle, the gun Officer Palmer had collected fell out of his pocket and onto the ground. Once the struggle ended and Officer Palmer had the individual in custody, he kept his "eye on the gun." Officer Clark picked up the gun shortly thereafter. Officer Palmer was wearing a body camera but there was no footage because of a suspected malfunction.

Calaway was charged by trial information, and trial was held April 24-25, 2023. The jury returned a guilty verdict on April 25, 2023. Calaway was sentenced on June 29, 2023. The district court sentenced Calaway to a five-year prison sentence on count I and a one-year sentence on count II, to run concurrently with each other. He now appeals.

## II. Standard of Review

We review challenges to sufficiency of the evidence for correction of errors at law. *State v. Petithory*, 702 N.W.2d 854, 856 (Iowa 2005). "The jury's verdict binds this court if the verdict is supported by substantial evidence," which "is evidence sufficient to convince a rational trier of fact the defendant is guilty beyond a reasonable doubt." *State v. Crawford*, 972 N.W.2d 189, 202 (Iowa 2022). We review the evidence "in the light most favorable to the State" which include any "legitimate inferences and presumptions that may fairly and reasonably be deduced from the record evidence." *Id.* (citation omitted).

## III. Discussion

Calaway argues the State presented insufficient evidence that he was in possession of a firearm—a required element of both of his convictions.

Iowa Code section 719.1(1)(f) makes it a class "D" felony for any individual to commit interference with official acts while displaying a "dangerous weapon" or "armed with a firearm." Under Iowa Code section 724.8B a person "who is committing an indictable offense is prohibited from carrying a dangerous weapon."

As defined in the jury instructions, a "dangerous weapon" is

> any device or instrument designed primarily for use in inflicting death or injury, and when used in its designed manner is capable of inflicting death. It is also any sort of instrument of device which is actually used in such a way as to indicate the user intended to inflict death or serious injury, and when so used is capable of inflicting death.

*See* Iowa Code § 702.7. Under section 702.7, a firearm qualifies as a dangerous weapon.

Calaway's sole argument is that neither officer actually saw him in possession of the firearm. This assertion is untrue. Officer Palmer stated that he

was a "hundred percent" sure he saw Calaway toss the weapon "into the bushes," even identifying that he disposed of the weapon "with his left arm." Calaway could not toss a weapon he did not possess.

Calaway also objects to Officer Palmer's testimony that he suspected Calaway was in possession of a weapon based on Calaway's actions when Officer Palmer first pulled up in the convenience store parking lot. Not only was this suspicion consistent with the report provided by the 9-1-1 caller, but Officer Palmer's suspicion was proved true when Calaway then tossed the weapon in the bushes shortly after Officer Palmer first observed Calaway in the convenience store parking lot.

Officer Palmer's immediate retrieval of a firearm from the exact bush he saw Calaway drop it in would allow a jury to easily infer that Calaway was in possession of that weapon. The jury found the officers credible, and the jury was in the best position to accept or reject their credibility. *See State v. Thornton*, 498 N.W.2d 670, 676 (Iowa 1993). We thus affirm, holding there was sufficient evidence presented by the State for the jury to find Calaway was in possession of a dangerous weapon.

**AFFIRMED.**