# IN THE COURT OF APPEALS OF IOWA

No. 20-1211
Filed April 14, 2021

**DAVID A. McCULLOUGH,**
Petitioner-Appellee,

**vs.**

**MORGAN L. CORNETTE,**
Respondent-Appellant.
_____

Appeal from the Iowa District Court for Scott County, Stuart P. Werling, Judge.

The mother of a minor child appeals the decision of the district court granting the child's father physical care and setting the mother's visitation rights. **AFFIRMED AS MODIFIED.**

Lynne C. Jasper, Bettendorf, for appellant.

Paul A. Aitken of Aitken, Aitken & Sharpe, P.C., Bettendorf, for appellee.

Considered by Vaitheswaran, P.J., and Tabor and Ahlers, JJ.

**AHLERS, Judge.**

In this custody dispute between the never-married parents of a seven-year-old child, the mother's methamphetamine abuse prompted an investigation by the Iowa Department of Human Services (DHS).[1] After the investigation began, the DHS was on the verge of removing the child from the mother's (Morgan Cornette's) care. The situation was saved when Morgan identified David McCullough as the father after deceiving him into believing the child was not his for the first six years of the child's life.

After David was notified he was the father, he immediately moved from Wisconsin to Iowa to look after the child. He began as a visitation supervisor but quickly became the sole caretaker for the child. As Morgan continued to struggle to comply with recommended drug treatment, any contact she had with the child had to be supervised by David. Eventually, David filed the petition that started this case. He sought to establish paternity and joint legal custody and also sought physical care of the child subject to Morgan's visitation.

The DHS continued to supervise the family and intended to remove the child if the child was placed in Morgan's care in this proceeding. Once it became clear the child would not be placed in Morgan's care, the DHS closed its case. In spite of the fact the sole reason the DHS case was closed was the child was in David's care, Morgan challenged the physical care determination in this proceeding. After the district court granted physical care to David, Morgan appealed. She claims

---

[1] The investigation started because the mother and her other child, the younger half-sibling of the child involved in this proceeding, tested positive for methamphetamine. Care and custody of the younger half-sibling is not an issue in this case.

she should have been granted physical care of the child or, in the alternative, joint physical care should have been granted. As an additional alternative argument, she argues that if the child remains in David's care, she should be granted additional visitation. Finally, both parties request an award of appellate attorney fees from the other party.

## I. Legal Standards.

Proceedings involving questions of custody and physical care of a child are in equity, so our review is de novo. *Phillips v. Davis-Spurling*, 541 N.W.2d 846, 847 (Iowa 1995). We give weight to the fact findings of the district court, especially in considering credibility of witnesses, but we are not bound by them. Iowa R. App. P. 6.904(3)(g). "[W]e will disturb a district court determination only when there has been a failure to do equity." *In re Marriage of Mauer*, 874 N.W.2d 103, 106 (Iowa 2016).

Of course, our primary concern on our review is the best interests of the child. *Phillips*, 541 N.W.2d at 847; Iowa R. App. P. 6.904(3)(o). Our goal is to place the child in the environment most likely to bring the child to "healthy physical, mental, and social maturity." *Phillips*, 541 N.W.2d at 847. We look to the same factors in custody or physical care determinations of a child born to parents who were never married as we do to a child of married parents, including the factors enumerated in Iowa Code section 598.41(3) (2019) and *In re Marriage of Winter*, 223 N.W.2d 165, 166–67 (Iowa 1974). *See Lambert v. Everist*, 418 N.W.2d 40, 42 (Iowa 1988); *see also* Iowa Code § 600B.40.

## II. Analysis of the Issues.

We address each of Morgan's arguments in turn.

### A.    Physical Care to David.

After our independent review of the record, we agree with the district court that physical care of the child was properly placed with David.  Morgan put the child in harm's way by abusing methamphetamine.  *See In re A.B.*, 815 N.W.2d 764, 776 (Iowa 2012) (acknowledging the risk methamphetamine use poses to a child placed in the methamphetamine user's care); *see also State v. Petithory*, 702 N.W.2d 854, 859 (Iowa 2005) ("No parent should leave his small children in the care of a meth addict—the hazards are too great.").  While Morgan strenuously asserts that she has overcome her methamphetamine addiction, her assertions are not supported by the record.  After her drug use was discovered and the DHS became involved, Morgan entered treatment.  She was kicked out for continuing to test positive for methamphetamine.  To her credit, she then attended and completed a twenty-eight day inpatient treatment program.  Notably, however, her aftercare program required intensive outpatient services, but she did not follow through with those services and was once again kicked out of the outpatient program.  Although it is unclear from the record whether she was discharged unsuccessfully this second time because of a positive drug test or lack of attendance, the fact remains she did not successfully complete her treatment.  To compound that problem, she systematically dodged drug testing by the DHS.  Despite repeated requests for her to submit to drug testing, Morgan simply ignored the DHS requests and did not submit to drug testing.  Based on these events, we share the concerns the DHS expressed that Morgan has not adequately addressed her substance-abuse problem.  Given her past struggles with methamphetamine, her refusal to complete aftercare, and her refusal to submit to drug testing, we are

not simply going to take Morgan at her word that she has overcome her problem. We will not gamble the child's best interests on her unsubstantiated claims of sobriety, especially when there is a better alternative available in the form of David.

There are other problems as well. Whether it is caused by drug use or there is some other cause, Morgan continues to exhibit erratic behavior. For the first five months or so after David arrived on the scene, including several months after she completed inpatient treatment, Morgan's contact with the child was sporadic. She was released from inpatient treatment a few days before Christmas, so she made plans to see the child at 10:00 Christmas morning. David accommodated her request. Without notice, she didn't show up. She finally called at 1:00 in the afternoon and reported she had overslept. Apparently, this lack of responsibility has not been fixed, as, eight months later, Morgan showed up half an hour late for trial in this case, without explanation, contributing to the district court's and our conclusion that Morgan has not achieved stability as she claims.

Morgan has also engaged in other conduct contributing to the conclusion she should not be granted physical care of the child. As previously noted, Morgan expressly and intentionally deceived David into believing he was not the child's father for six years, depriving the child of the benefits of David's involvement in his life. Only when she needed David to save her dire situation did she finally divulge the truth. Then, after David remarkably uprooted his life and moved to Iowa in a very short period of time in order to keep the child from being removed and placed in foster care, Morgan refused to let him have the child's clothes or toys, requiring David to buy new ones. In addition, knowing the DHS required David to supervise all interactions she had with the child, on one occasion, Morgan took the child and

absconded with him until law enforcement and the DHS got involved and secured the return of the child. Morgan also refused to give David the child's medical card so he could arrange counseling for the child. Finally, in spite of the fact the child had been in David's care exclusively for nearly one year by the time of trial, Morgan had contributed nothing in the way of financial support.

In stark contrast, the record reveals no concerns about David's parenting ability. The DHS was in close contact with the family for approximately six months between David's arrival and the closing of the DHS case. During that time, they observed nothing of concern and had nothing but good things to say about David's parenting ability and the manner in which he provided for the child's needs. He is gainfully employed and maintains a suitable home for the child. He has encouraged Morgan's relationship with the child, even when Morgan was uncommunicative and in the chaos of her failed drug treatments. When weighing the respective parenting abilities and the contrast in commitments to the child, we agree it is in the child's best interests to be placed in David's physical care.

## B.    Joint Physical Care Alternative.

Turning to Morgan's alternative argument that the parents should have been awarded joint physical care, we find the argument unpersuasive. For the same reasons explained as to why David should be awarded physical care, we conclude joint physical care is not the way to go for this child. Morgan highlights the fact the parties are able to communicate, noting they exchange the child generally without incident. In response, we first note the record does not support a conclusion of anything beyond minimal communication between the parties, as there is not even much in the way of communication when the child is being exchanged between

them. There is a big difference between being able to exchange a child without incident and communicating well enough to have shared care. Second, even if we concluded the parties communicated well, it would not be enough to overcome our previously expressed concerns, shared by the DHS, of placing the child in Morgan's care for extended periods of time. In short, we decline to grant Morgan's alternative request to order joint physical care of the child.

### C.    Visitation.

We do, however, partially grant Morgan's request for modification of the visitation provisions. Via a temporary order issued in this case, part of the visitation provided to Morgan included every Wednesday from 3:00 p.m. to 8:00 p.m. When questioned about the every Wednesday visitation, David expressed no objection to it and, in fact, testified he was in support of it. For reasons unknown, the district court awarded weekday visitation only every other Wednesday evening. While we do not modify the district court's decision on visitation lightly, we also see no equity in curtailing Wednesday visitation when the parties have been following an every-Wednesday routine and both parties are in favor of it. Allowing visitation every Wednesday also has the added benefit of allowing this child to be with Morgan at the same time she has visitation with her other child. *See In re Marriage of Orte*, 389 N.W.2d 373, 374 (Iowa 1986) (noting a preference for keeping siblings together, including half-siblings).

### D.    Appellate Attorney Fees.

Both parties request an award of appellate attorney fees from the other party. Iowa Code section 600B.26 permits our court to award reasonable attorney fees to the prevailing party. The standards applicable to an award of attorney fees

under Iowa Code chapter 600B are the same as those that apply to a dissolution of marriage action pursuant to chapter 598, except they are limited to being awarded only to the prevailing party. *See Markey v. Carney*, 705 N.W.2d 13, 25 (Iowa 2005). "Appellate attorney fees are not a matter of right, but rather rest in this court's discretion." *In re Marriage of Okland*, 699 N.W.2d 260, 270 (Iowa 2005). "In determining whether to award appellate attorney fees, we consider the needs of the party making the request, the ability of the other party to pay, and whether the party making the request was obligated to defend the decision of the trial court on appeal." *In re Marriage of Hoffman*, 891 N.W.2d 849, 853 (Iowa Ct. App. 2016) (quoting *In re Marriage of Kurtt*, 561 N.W.2d 385, 389 (Iowa Ct. App. 1997)).

As to Morgan's claim for fees, we are hard-pressed to view her as the prevailing party. Although she successfully obtained a minor modification to the visitation schedule, she was unsuccessful on the crux of her appeal. Even if we were to view her technically as a prevailing party, the equities do not warrant an award of attorney fees.

As to David's claim for fees, we view David as the primary prevailing party and acknowledge he was obligated to defend the district court's decision on appeal. However, when considering the relative needs of the parties and their ability to pay, we determine Morgan does not have sufficient means to justify an award of fees to David.

## III. Conclusion.

We affirm the district court's ruling in its entirety, with the exception that we modify the provision for weekday visitation to allow Morgan visitation with the child

every Wednesday from 3:00 p.m. or when the child's school day ends, whichever is later, to 8:00 p.m. Both parties' claims for appellate attorney fees are denied. Costs are assessed ninety percent to Morgan and ten percent to David.

**AFFIRMED AS MODIFIED.**