**IN THE COURT OF APPEALS OF IOWA**

No. 23-0976
Filed September 13, 2023

**IN THE INTEREST OF C.C., J.C. and D.C.,**
**Minor Children,**

**B.C., Father,**
     Appellant,

**A.R., Mother,**
     Appellant.
_____

Appeal from the Iowa District Court for Pottawattamie County, Donna Bothwell, District Associate Judge.

Parents separately appeal the termination of their parental rights. **AFFIRMED ON BOTH APPEALS.**

J. Joseph Narmi, Council Bluffs, for appellant father.

Maura C. Goaley, Council Bluffs, for appellant mother.

Brenna Bird, Attorney General, and Tamara Knight, Assistant Attorney General, for appellee State.

Kristen Elizabeth Bracker, Council Bluffs, attorney and guardian ad litem for minor children.

Considered by Greer, P.J., and Schumacher and Badding, JJ.

**BADDING, Judge.**

Parents who are in a domestically-violent relationship and continue to use methamphetamine appeal the termination of their parental rights to their three children—born in 2013, 2018, and 2020—under Iowa Code section 232.116(1)(e), (f), (h), and (*l*) (2023).[1] They each claim (1) the juvenile court abused its discretion by not continuing the termination hearing, (2) the evidence did not support the grounds for termination, (3) termination is not in the children's best interests, and (4) permissive exceptions to termination should have been applied. The father also claims the juvenile court should have established a guardianship with the paternal grandmother. Following our de novo review, *see In re L.B.*, 970 N.W.2d 311, 313 (Iowa 2022), we affirm on both appeals.

**I. Background Facts and Proceedings**

In August 2021, the youngest child's leg was cut by glass when the father broke a window during an argument with the mother. The injury was reported to the Iowa Department of Health and Human Services, which was already familiar with the parents from child-abuse reports dating back to 2017. The father left the mother's home with the older two children before the police arrived.[2] He then told the children's school that the department was not allowed to have any contact with the children. When asked whether she wanted the older two children in her care,

---

[1] The parents' rights were terminated under paragraphs (e) and (*l*) as to all children, paragraph (f) as to the two older children, and paragraph (h) as to the youngest child. A fourth child was born to the parents in March 2023. That child is not involved in this appeal.

[2] Leading up to this incident, the older two children were mostly living with the father and the paternal grandmother, while the youngest child was living with the mother.

the mother declined, saying that she "did not want to disrupt their stability and lives" with their paternal grandmother. The State accordingly obtained an order to temporarily remove the two older children. They were placed with the paternal grandmother, where the father still lived, while the youngest stayed with the mother.

Concerns for methamphetamine use by both parents arose in September and continued for the rest of the proceedings. All three children were adjudicated to be in need of assistance in October. Things went well—at first. Both parents participated in mental-health and substance-abuse treatment and quickly progressed to unsupervised visits. But then the father began refusing drug tests, and the mother began testing positive for methamphetamine. Once the father finally submitted to a hair test in April 2022, it came back positive for methamphetamine. The mother's test did too. So the youngest child was removed from the mother's custody, and the parents' visits with the children reverted to fully supervised.

Matters didn't improve much from there. Even though both parents completed inpatient treatment in October, they quickly went back to using methamphetamine. The father was arrested in November for assaulting the mother, and they repeatedly violated the no-contact order entered between them. Despite both parents' participation in substance-abuse treatment, they kept testing positive for methamphetamine,[3] which ultimately prompted the State to file termination petitions in March 2023.

---

[3] They also tested positive for amphetamines, and several of the mother's tests were positive for THC.

A hearing on those petitions was set for May 11. The mother entered inpatient treatment—her third attempt during these proceedings—on May 2, where she tested positive for methamphetamine upon admission. Two days before the termination hearing, the father moved to continue the hearing because of his participation in services, the mother's inpatient treatment, and the birth of their fourth child in late March. Overall, the father argued, he and the mother had "the train back on the track, and appear to be moving in the right direction." The State resisted, and the court entered an order directing that the motion be heard at the time of the termination hearing.

The hearing was held as scheduled but, as the State points out, the father's motion to continue was not brought up.[4] By the time of the hearing, the father was living in his truck and still testing positive for methamphetamine. He had a positive test in late April, and no-showed for a drug test between then and the hearing. The mother was doing no better, even though she was at inpatient treatment again. As noted, the mother tested positive for methamphetamine a little more than a week before the hearing. And on the eve of the hearing, she was arrested for child endangerment after their newborn tested positive for methamphetamine and amphetamines. The parents also continued to violate the no-contact order. The evidence did show that the parents performed well during *supervised* visits with the children—interacting with them in a loving and positive manner. And the

---

[4] Both parents contend in their petitions on appeal that the mother made an oral motion to continue at the termination hearing. The transcript shows that never happened. While the parents' attorneys briefly questioned the department caseworker on cross-examination about deferring permanency and asked for more time to work toward reunification in their closing arguments, there was no discussion about continuing the termination hearing.

department caseworker agreed the children were bonded to their parents. But when asked whether termination would be detrimental to the children, the worker testified: "I think it would be more detrimental to keep them with the parents who engage in domestic violence and use methamphetamine."

The juvenile court found the evidence supported termination of the parents' rights under Iowa Code section 232.116(1)(e), (f), (h), and (*l*). Given the parents' past performance and demonstrated inability to stop using methamphetamine, the court also found termination was in the children's best interests. The court declined to apply the permissive exception urged by the parents based on the grandmother having custody of the children because the grandmother could not continue caring for the children. *See* Iowa Code § 232.116(3)(a). And while the court acknowledged the strong bond between the parents and children, *see id.* § 232.116(3)(c), the court found that "[a]ny harm the children may suffer from the termination of parental rights is far outweighed by the harm they would suffer if permanency was not granted and the rights not terminated." So the court terminated the parents' rights. The parents separately appeal from that ruling.

## II.     Analysis

### A.     Motion to Continue

Both parents claim the termination hearing should have been continued for various reasons. Our review of a ruling denying a motion to continue, had there been one, would be for an abuse of discretion. *In re C.W.*, 554 N.W.2d 279, 281 (Iowa Ct. App. 1996). While the father did file a written motion to continue, the oral motion the parents said the mother made at the termination hearing is not in our record. The record also does not include a ruling on the written motion to continue

or any supposed oral motion to continue. Because "there is nothing for us to review," we agree with the State that error was not preserved and do not consider this issue further. *See In re D.G.*, No. 09-1291, 2009 WL 337681, at *1 (Iowa Ct. App. Oct. 7, 2009); *see also Stammeyer v. Div. of Narcotics Enf't*, 721 N.W.2d 541, 548 (Iowa 2006) (finding an argument not preserved for appeal when there was "nothing indicating the court ruled upon or even considered [it]").

## B.     Grounds for Termination

Both parents challenge the sufficiency of evidence supporting the grounds for termination. We may affirm termination "on any ground we find supported by clear and convincing evidence." *In re D.W.*, 791 N.W.2d 703, 707 (Iowa 2010). Turning our attention to section 232.116(1)(f) and (h), the parents only challenge the final elements of each provision—that the children could not be returned to their custody at the time of the termination hearing.[5]   *See* Iowa Code § 232.116(1)(f)(4), (h)(4); *D.W.*, 791 N.W.2d at 707 (interpreting the statutory language "at the present time" to mean "at the time of the termination hearing").

The mother was in jail at the time of the termination hearing, and the father was homeless. These circumstances prevented an immediate return of the children to parental custody. *See In re A.C.*, No. 19-1054, 2019 WL 5792686, at *1 (Iowa Ct. App. Nov. 6, 2019) (finding parent's incarceration served as clear and convincing evidence that child could not be returned); *In re M.S.*, No. 09-0214, 2009 WL 929045, at *2 (Iowa Ct. App. Apr. 8, 2009) (concluding a

---

[5] *See In re B.W.*, No. 23-0518, 2023 WL 4759462, at *3 n.5 (Iowa Ct. App. July 26, 2023) (discussing the two different interpretations in our case law for finding that children "cannot be returned" to parental custody). Our conclusion is the same under either interpretation.

parent who was living "out on the streets" could not have the child returned to her custody). While the father submits that "he certainly could and would return to" the paternal grandmother's home "to take on custody of his children," the record shows neither the grandmother nor the department was on board with that option. In any event, the parents' "unrelenting drug addictions, which persisted through the time of termination, are enough to show the children could not be safely returned to their" custody. *In re C.A.*, No. 23-0746, 2023 WL 5092843, at *2 (Iowa Ct. App. Aug. 9, 2023).

We find the evidence sufficient to support termination under section 232.116(1)(f) and (h).

### C. Best Interests

Moving on to the parents' claims that termination is not in the children's best interests, we "give primary consideration to the child[ren]'s safety, to the best placement for furthering the long-term nurturing and growth of the child[ren], and to the physical, mental, and emotional condition and needs of the child[ren]." Iowa Code § 232.116(2). The defining elements of a child's best interests are safety and need for a permanent home. *In re H.S.*, 805 N.W.2d 737, 748 (Iowa 2011).

The father first argues termination is not in the children's best interests because they are placed with the paternal grandmother. But this argument more properly falls under our consideration of the permissive exception in section 232.116(3)(a), discussed below. The father also argues that the parents will continue to participate in services for their newborn, so there is no "rush at this point with both parents making positive strides." For starters, the record does not show positive strides by the parents on the main issue in this case, that being

substance abuse. And the father's argument ignores that the children in interest have been removed well beyond the statutory time limitations. Accordingly viewing this matter with "a sense of urgency" in light of the father's past performance and inability to maintain sobriety, we conclude termination of his rights is in the children's best interests. *See In re A.B.*, 956 N.W.2d 162, 169 (Iowa 2021).

As for the mother, she claims "[b]oth parents were on the right track to reunify, had safe living situations, and were following through with the court's orders when termination occurred." The record contradicts all those assertions. The mother otherwise echoes the father's best-interest arguments, which we reject for the same reasons stated above. Simply put, we cannot allow these children to linger in limbo and be deprived permanency upon a hope that the parents will someday be in a place to parent them. *See In re A.M.*, 843 N.W.2d 100, 112 (Iowa 2014).

### D. Permissive Exceptions

Both parents claim the juvenile court should have applied the exceptions to termination in Iowa Code section 232.116(3)(a) and (c). We first note the application of a statutory exception to termination, if one exists, is "permissive, not mandatory." *In re M.W.*, 876 N.W.2d 212, 225 (Iowa 2016) (citation omitted). And "the parent resisting termination bears the burden to establish an exception." *In re A.S.*, 906 N.W.2d 467, 476 (Iowa 2018).

Section 232.116(3)(a) authorizes the court to forgo termination when "[a] relative has legal custody of the child[ren]." This exception is inapplicable given that the most recent child-in-need-of-assistance review order before the termination hearing directed that the children be placed in the department's

custody. Even if the paternal grandmother had legal custody, she testified that she could not raise the children for the parents anymore: "I'm too old. I'm wore out. I'm exhausted. . . . I just can't—I can't do it no more." When asked whether she would supervise the father as he adjusted to parenting, she said that she would, but only "[f]or a short amount of time," that being no later than when summer started in roughly three weeks. We find this exception does not apply.

In turn, Iowa Code section 232.116(3)(c) authorizes the court to forgo termination when it "would be detrimental to the child . . . due to the closeness of the parent-child relationship." The record shows the children are bonded to their parents and will suffer some disadvantage as a result of termination. But the question is whether that disadvantage overcomes the parents' inability to parent the children. *See D.W.*, 791 N.W.2d at 709. The only stability these children have experienced has been provided by their grandmother, not the parents. The grandmother pointedly told the court she is done filling that parental void. And, as the caseworker for the department testified, the parents have continued to choose one another and methamphetamine over their children. We conclude any disadvantage the children will face as a result of termination does not overcome the disadvantage they would encounter in the parents' care. *See State v. Petithory*, 702 N.W.2d 854, 859 (Iowa 2005) ("What parent among us would entrust a [child] to a meth addict? No right thinking parent would do so, because of the dangers and hazards."). We accordingly decline to apply this exception as well.

### E. Guardianship

Lastly, the father passively suggests "a guardianship would work." The juvenile court did not rule on any request for a guardianship, so error is not

preserved. Even if we bypassed that deficiency, a guardianship is not the preferred method for permanency. *See A.S.*, 906 N.W.2d at 477 ("[A] guardianship is not a legally preferable alternative to termination." (citation omitted)). And a guardianship cannot be used as a permanency option unless "convincing evidence" shows termination would not be in the children's best interests. *See* Iowa Code § 232.104(2)(d)(2), (4)(a). Here, we have already concluded termination is in the children's best interests. Lastly, the grandmother has clearly stated that she is not a permanency option, so the father is wrong that a guardianship with her "would work."

## III. Conclusion

We affirm the termination of both parents' rights.

**AFFIRMED ON BOTH APPEALS.**