## IN THE COURT OF APPEALS OF IOWA

No. 24-0675
Filed August 7, 2024

**IN THE INTEREST OF O.J.,**
**Minor Child,**

**L.K., Mother,**
        Appellant.

_____

Appeal from the Iowa District Court for Audubon County, Justin R. Wyatt, Judge.

A mother appeals the order terminating her parental rights to her three-year-old daughter. **AFFIRMED.**

Jonathan Mailander, Atlantic, for appellant mother.

Brenna Bird, Attorney General, and Tamara Knight, Assistant Attorney General, for appellee State.

William T. Early, Harlan, attorney and guardian ad litem for minor child.

Considered by Tabor, P.J., and Greer and Schumacher, JJ.

**TABOR, Presiding Judge.**

O.J., who was born in April 2021, has spent most of her life in and out of the care of relatives.  Her mother, Lacey, battles drug addiction.  Just before her first birthday, O.J. was removed from Lacey's home after the mother admitted using methamphetamine.  For two years, Lacey worked toward sobriety.  Twice, O.J. was placed back in Lacey's care; both times, O.J. was again removed after a brief period of sobriety ended in relapse.  After two years, the juvenile court terminated Lacey's parental rights.  Lacey appeals, arguing that the State failed to prove grounds for termination under Iowa Code section 232.116(1)(h) (2023) and that the juvenile court should have made an exception under section 232.116(3)(c).  Because we reject both arguments, we affirm the termination.

## I.     Facts and prior proceedings

Lacey has been using methamphetamine, off and on, since 2018.  When O.J. was born, Lacey was living with O.J.'s father, Robert.[1]  The Iowa Department of Health and Human Services (HHS) became concerned about O.J.'s welfare in October 2021 after it received a report that Robert had been using methamphetamine while caring for the infant.  To address that concern, the department and O.J.'s parents opened a voluntary services case for O.J.  The department made a series of recommendations to Lacey: first, that she and Robert remain sober while caring for O.J.; second, that Robert find separate living arrangements until he achieved sobriety; third, that she supervise interactions between Robert and O.J.

---

[1] The court also terminated Robert's parental rights.  He does not appeal.

In February 2022, the department received a report that Robert had assaulted Lacey in O.J.'s presence and that the parents had been using methamphetamine.[2] Investigating that report, a child protection worker noted that Lacey's home was in "good shape" with "a safe sleep space" for O.J. Lacey told the worker that she would not allow Robert to live with her and O.J. anymore. When the worker noted that Lacey had not followed through on that promise before, she responded that she was "not messing around this time." Lacey told the worker that she had not used drugs for over a year.

But on March 10, Lacey admitted that she had been using methamphetamine that spring, and a urinalysis confirmed her admission. The next day, the district court transferred custody of O.J. to the department, which placed O.J. in the care of her paternal aunt and later in the care of her paternal grandmother.

In April, the court adjudicated O.J. as a child in need of assistance (CINA) under Iowa Code sections 232.2(6)(c)(2), (n), and (p).[3] It noted: "A child under one year of age is unable to self-protect from a caretaker who is using methamphetamine. A parent's methamphetamine addiction itself can result in harmful effects to the child, justifying state intervention to protect the child."

A week after the CINA ruling, the department authorized Lacey to take O.J. on a weekend visit to Lacey's parents. But it revoked the authorization when it

---

[2] O.J.'s half-sister, M.H., went to live with her father after this incident under a custody agreement between Lacey and M.H.'s father.
[3] These provisions are now substantially codified at Iowa Code section 232.96A(3)(b), (14), and (16) (2024).

learned that Lacey had invited Robert, freshly unsuccessfully discharged from inpatient treatment, to join them without permission.

In May, the department reported to the court that O.J. was "healthy" and "bonded with her parents" and that "[b]oth Lacey and [Robert] demonstrate very nurturing and loving parental roles and interactions." The court adopted the department's recommendation that the goal be reunification.

But four days later, a case worker visited Lacey's house and found Robert "agitated" and with eyes dilated. On a tour of the house, the worker noted Lacey's nervous behavior, a "foul smell . . . more bitter and stronger than . . . cigarette smoke," a man hiding under the bed, and an odd arrangement in the basement resembling a methamphetamine lab. Police officers later found drug paraphernalia in the house. After these findings, the department revoked permission for at-home visitation between O.J. and her parents. At the end of May 2022, both Lacey and Robert tested positive for methamphetamine, were evicted, and moved into a house known in town as a "drug dealer home." Ten days later, both Lacey and Robert entered inpatient treatment.

Lacey's treatment went well, and in mid-July the department placed O.J. in her care at the facility. Later, in August, O.J. returned home with Lacey after Lacey completed treatment. The department again reported to the court that O.J. was "healthy" and "bonded with her parents," adding that she "demonstrates emotional responses when able to see her parents." Still, it relayed some concern about Lacey's behavior while in treatment, noting Lacey's "breaking and manipulating rules" and "disregard[ing] requests by [the department]" to supervise off-campus visitation with O.J.

Two months later, the department removed O.J. from Lacey's care after Lacey admitted cocaine use and tested positive for methamphetamine.[4]  During the two months O.J. lived at Lacey's house, Lacey again allowed Robert to care for O.J. without supervision.  After Lacey's relapse, the department placed O.J. in the care of her maternal grandparents, to whose home Lacey also moved.  A permanency hearing in early November maintained the reunification goal but did not return O.J. to Lacey's custody; the court set a modification hearing for February 2023.  *See* Iowa Code § 232.58(3)(b).

While Robert spent another period in inpatient drug treatment after a positive methamphetamine test, Lacey stayed sober, and in February 2023, the court returned O.J. to Lacey's custody under HHS supervision.  Lacey had by that time moved out of her parents' home and into an apartment.  The court kept the reunification goal but again postponed making a final permanency decision and set a modification hearing for June.  *See* Iowa Code § 232.58(3)(b).

One month later, Lacey relapsed again.  The court returned O.J. to the department's custody; the department returned O.J. to the care of her maternal grandparents.  In June, the department reported steady methamphetamine use by both Lacey and Robert and recommended termination of their parental rights to O.J.  The court ordered the county attorney to petition for termination, noting O.J. by that point "struggle[d] with the confusion caused by visitation, specifically in regard to her mother leaving at the end of visits."

---

[4] Lacey denied using drugs to her counselor one day before testing positive.

Throughout the summer, Robert and Lacey continued using methamphetamine. Yet Lacey told her family-centered services worker and her counselor that she had been sober. And she allowed O.J. to stay overnight at her apartment without department permission. Her attendance at outpatient treatment became inconsistent. By September, though no time limits had been placed on Lacey's visitation with O.J., Lacey was visiting her only two or three times per week, for only twenty minutes at a time.

In September 2023, O.J.'s grandmother reported that her health would no longer allow her to care for O.J. The department transferred O.J. back to the care of her paternal aunt.

That same month, the county attorney petitioned for termination of Lacey's parental rights with respect to O.J. under Iowa Code section 232.116(1)(h). The court scheduled a trial for December, which was continued until February 2024. In the meantime, the department reported that O.J. had become "very confused about parental roles and family relationships," as shown by her "addressing all females in a caretaking role as 'mom.'"

Lacey was sober over the autumn months. Yet she missed a drug test in January 2024. While she returned a negative test twenty days later, her missed test was a key concern at trial. Lacey argued that the State failed to prove O.J. could not be returned to her custody, a necessary element of section 232.116(1)(h), since she had been sober for over six months and had an adequate source of income, a car, and an appropriate residence. Iowa Code § 232.116(1)(h)(4). Her explanation for the missed test in January was that she could not urinate. She also argued that even if the State proved that O.J. could

not be returned, the court should make an exception because of the closeness of O.J.'s bond with her.  *See* Iowa Code § 232.116(3)(c).

The court doubted Lacey's sobriety: "[Lacey] could not explain her inability, or refusal, to provide a UA drug screen as requested on January 11, 2024, despite drinking water and remaining at the testing facility for 5 hours."  The court's concern led it to conclude that O.J. could not be returned to Lacey's custody at the time of the trial.  And it declared that termination was in O.J.'s best interest.

Neither did the court embrace Lacey's exception argument.  It found only a weak bond between O.J. and Lacey that had deteriorated significantly over the year before.  As evidence, it cited reports that Lacey was visiting O.J. sparingly as well as O.J.'s habit of calling other caretakers "mom."  Thus, the court declined to forgo termination under section 232.116(3)(c).  Lacey appeals.

## II.      Standard of review

We review termination-of-parental-rights cases de novo.  *In re M.W.*, 876 N.W.2d 212, 219 (Iowa 2016).  Accordingly, we review the evidence and adjudicate rights anew; and though we give weight to fact findings of the juvenile court, especially when considering credibility of witnesses, we are not bound by them. *In re M.M.*, 483 N.W.2d 812, 814 (Iowa 1992); *see In re H.L.B.R.*, 567 N.W.2d 675, 679 (Iowa Ct. App. 1997) ("Where there is conflicting evidence on some issues, we give consideration to juvenile court on issues of credibility.").

To prevail, the State must present clear and convincing evidence in support of termination.  Iowa Code § 232.117(3).  Evidence is clear and convincing when there is no serious or substantial doubt about the correctness of a legal conclusion drawn from the evidence.  *In re M.S.*, 889 N.W.2d 675, 679 (Iowa Ct. App. 2016).

**III.    Discussion**

Section 232.116 calls for a three-part analysis in termination decisions. First, we must determine whether the State has proven a statutory ground for termination. Iowa Code § 232.116(1). If the State has, we ensure termination is in the child's best interest. *Id.* § 232.116(2). Finally, before terminating a parent's rights, we must decide whether to apply any of the permissive exceptions. *Id.* § 232.116(3).

**A. Ground for termination**

As for the first piece of the analysis, the State based its petition on paragraph (h), which requires proof of four elements. Iowa Code § 232.116(1)(h).[5] Lacey concedes all but the fourth element, which requires proof "that the child cannot be returned to the custody of the child's parent[] as provided in section 232.102 at the present time." *Id.* § 232.116(1)(h)(4). "'[A] child cannot be returned to the custody of the child's parent under section 232.102 if by doing so the child would be exposed to any harm amounting to a new child in need of assistance

---

[5] To find termination appropriate under paragraph (h), the court must find all the following supported by clear and convincing evidence:
> (1) The child is three years of age or younger.
> (2) The child has been adjudicated a child in need of assistance pursuant to section 232.96.
> (3) The child has been removed from the physical custody of the child's parents for at least six months of the last twelve months, or for the last six consecutive months and any trial period at home has been less than thirty days.
> (4) There is clear and convincing evidence that the child cannot be returned to the custody of the child's parents as provided in section 232.102 at the present time.

Iowa Code § 232.116(1)(h).

adjudication.'" *M.S.*, 889 N.W.2d at 680 (quoting *M.M.*, 483 N.W.2d at 814); *see* Iowa Code § 232.102(4)(a)(2).[6]

A parent's methamphetamine addiction alone is sufficient evidence to prove that the child has suffered or is imminently likely to suffer "harmful effects" because of the parent's failure to exercise a reasonable degree of care in supervising them, a basis for CINA designation under section 232.96A(3)(b). *In re J.S.*, 846 N.W.2d 36, 41–42 (Iowa 2014) ("[A] juvenile court could reasonably determine that a parent's active addiction to methamphetamine is 'imminently likely' to result in harmful effects to . . . the children in the parent's care.") (citing *In re A.B.*, 815 N.W.2d 764, 776 (Iowa 2012)); *see State v. Petithory*, 702 N.W.2d 854, 859 (Iowa 2005) ("No parent should leave his small children in the care of a meth addict— the hazards are too great.").

O.J. could not have been returned to Lacey's custody under section 232.102 at time of trial. Were O.J. returned to Lacey's custody, she would be exposed to the same harms for which she was adjudicated as a CINA more than two years ago, all of which stem from her mother's addiction to methamphetamine. As the juvenile court stated in its CINA ruling, a young child is unable to self-protect from a caretaker who is using methamphetamine.

---

[6] Our case law offers two formulations for what it means when a child "cannot be returned" to parental custody as provided in section 232.102 (discussing transfer of a child's legal custody if staying in the home would be "contrary to the welfare of the child"). Many cases cite *M.M.*, 483 N.W.2d at 815, as we do here. But our supreme court often describes that element as the inability to "safely return" children to their parents' care. *See, e.g.*, *In re T.W.*, No. 20-0145, 2020 WL 1881115, at *2–3 (Iowa Ct. App. Apr. 15, 2020) (collecting cases). Under either formulation, the State met its burden of proof here.

And the State proved that Lacey was still grappling with her addiction by the time of trial. We presume that she missed the January 11 test because she had a lapse. The juvenile court did not believe her excuse for not providing a urine sample, and we defer to its credibility determination. We consider Lacey's dishonesty regarding her drug use over the course of O.J.'s CINA case in accepting that determination. *See In re Dameron*, 306 N.W.2d 743, 745 (Iowa 1981) ("[W]e necessarily consider what the future likely holds for the child if returned to his or her parents. Insight for this determination can be gained from evidence of the parent's past performance, for that performance may be indicative of the quality of the future care that parent is capable of providing.").

Because the evidence revealed an ongoing danger of methamphetamine use, we have no serious doubts about the juvenile court's conclusion that O.J. could not be returned home at time of trial. Thus, the State proved by clear and convincing evidence the grounds for termination under section 232.116(1)(h).

**B. Best interests of the child**

The next step is to ensure termination is in O.J.'s best interests. *See* Iowa Code § 232.116(2). In making that determination, we must consider, among other things, "[O.J.'s] safety," "the best placement for furthering [O.J.'s] long-term nurturing and growth," and "[O.J.'s] physical, mental, and emotional needs." *Id.* § 232.116(2); *see In re P.L.*, 778 N.W.2d 33, 36–39 (Iowa 2010) ("Rather than a court using its own unstructured best-interest[s] test, the court is required to use the best-interest[s] framework established in section 232.116(2) when it decides what is in the best interest[s] of the child.").

The conclusion that O.J. would be safer with Lacey's parental rights terminated follows from our finding that Lacey has not yet overcome her addiction. *See Petithory*, 702 N.W.2d at 859. What's more, O.J. needs stability and permanency to foster her long-term nurturing and growth. Lacey's past performance makes us doubt that she can provide that right now. Termination is in O.J.'s best interest.

### C. Statutory exception

Finally, having decided termination is in O.J.'s best interest, we turn to section 232.116(3). Lacey argues we should apply an exception because of her bond with O.J. *See In re A.S.*, 906 N.W.2d 467, 476 (Iowa 2018) ("[O]nce the State has proven a ground for termination, the parent resisting termination bears the burden to establish an exception to termination under Iowa Code section 232.116(3)(a).").

But the record does not show that O.J.'s relationship with Lacey is so close that "termination would be detrimental to the child." *See* Iowa Code § 232.116(3)(c). O.J. does have a connection with Lacey. But, as the juvenile court found, their ties weakened in the year before the trial. The department did not report a bond between Lacey and O.J. after October 2022, though it had consistently done so up to that time. Lacey had only short visits with her daughter during the final months before trial. We decline to apply that exception here.

**AFFIRMED.**